IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,973

WATER DISTRICT NO. 1 OF JOHNSON COUNTY, KANSAS,
*Appellee*,

v.

PRAIRIE CENTER DEVELOPMENT, L.L.C., et al.,
*Defendants,*

and

D.P. BONHAM and WANDA BONHAM, Individually, and as Trustees
of the D.P. AND WANDA BONHAM TRUST,
*Appellants*.

SYLLABUS BY THE COURT

1.

In Kansas, the Eminent Domain Procedure Act provides the only avenue through which the government can exercise its eminent domain power. A statute conferring the right to exercise the power of eminent domain is to be strictly construed in light of the objectives and the purposes sought to be attained by its enactment.

2.

Provisions of the Eminent Domain Procedure Act control an eminent domain proceeding to the extent the provisions address an issue. In an appeal from an eminent domain award, the code of civil procedure applies.

3.

A government entity filing a petition under the Eminent Domain Procedure Act must name and provide notice to all owners of an interest in land the entity seeks to take, including lienholders and anyone in possession of the property.

4.

Eminent domain proceedings, which are intended to be quickly resolved, only concern (1) the authority to take and (2) just compensation for the taking. Litigation of collateral issues is relegated to other civil actions.

5.

There is no provision in the Eminent Domain Procedure Act precluding a landowner from raising statutory defect arguments in the condemnation proceeding.

6.

The language in an eminent domain petition and the corresponding appraiser's report determines the extent of the property rights taken. Generally, no more property of a private individual, and no greater interest therein, can be condemned and set apart for public use than is absolutely necessary. A condemning body has no authority to appropriate private property for only a contemplated or speculative use in the future.

7.

When interpreting a written document, the intent of the parties controls and is best evinced by the document's unambiguous language. A document's meaning should be gleaned from the document as a whole rather than through the analysis of a single or isolated provision.

8.

Inverse condemnation is an action initiated by the landowner and is available when private property has been taken for public use without formal condemnation proceedings and where it appears there is no intention or willingness of the taker to bring the action.

9.

The owner of an easement is entitled to compensation when the easement is taken in eminent domain.

10.

In an eminent domain proceeding, parol evidence is not admissible to limit the extent of a taking.

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed June 10, 2016. Affirmed.

*Lance Y. Kinzer*, of Schlagel Kinzer, LLC, of Olathe, argued the cause and was on the briefs for appellant.

*Paul G. Schepers*, of Orrick & Erskine, LLP, of Overland Park, argued the cause and *Timothy P. Orrick*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  Water District No. 1 of Johnson County, Kansas (referred to by the parties as WaterOne) filed an eminent domain petition in the district court seeking to condemn 10 tracts of land "[s]ubject to existing easements of record." Prairie Center Development, L.L.C., owned each of the tracts in fee simple. After the district court

3

granted the petition, D.P. and Wanda Bonham and the D.P. and Wanda Bonham Trust (hereinafter the Bonhams)—who were not parties to the condemnation proceeding—filed both an appeal of the condemnation award and a motion to void the district court's order. The Bonhams owned an easement in one of the 10 condemned tracts, and they argued that WaterOne necessarily took their easement without complying with the Eminent Domain Procedure Act (EDPA) as to their easement. See K.S.A. 2015 Supp. 26-501 *et seq.* After hearing arguments, the district court denied the Bonhams' motion to void, concluding that WaterOne did not condemn the Bonhams' easement. We affirm the district court's decision.

FACTS AND PROCEDURAL BACKGROUND

WaterOne's plan was to install "a water pump station, a reservoir and system of transmission and distribution mains in Johnson County, Kansas." To complete this project, WaterOne exercised its eminent domain power to condemn permanent water main easements and temporary construction easements in the 10 tracts of land on and around which the project was to be constructed. Prairie Center Development, L.L.C., was the owner of the 10 tracts. In February 2014, WaterOne filed an eminent domain petition in the district court against Prairie Center Development and "any unknown persons claiming an interest in or in possession of the property described herein."

About a month later, the district court approved WaterOne's petition and appointed appraisers to conduct a valuation of the land. Thereafter, the appraisers determined just compensation for the condemned lands, and the district court ordered WaterOne to pay the awards. The record does not reflect that WaterOne or Prairie Center Development filed an appeal.

4

Instead, the Bonhams, who were not parties to the proceedings, filed both an appeal of the award and a motion to void the condemnation. Specifically, the Bonhams argued the condemnation relating to one of the tracts—Tract 16A—was void for noncompliance with the EDPA. The Bonhams possessed their own easement in Tract 16A and argued that WaterOne failed to name them in the condemnation petition or send them the proper statutory notice. In response, WaterOne argued it did not have to name the Bonhams or give them notice under the EDPA because it did not intend to take or interfere with their easement. After considering the motion in a hearing, the district court denied the Bonhams' motion to void. The Bonhams timely appealed to this court, which has jurisdiction under K.S.A. 2015 Supp. 26-504 ("Appeals to the supreme court may be taken from any final order under the provisions of [the EDPA].").

ANALYSIS

In Kansas, the EDPA provides the only avenue through which the government can exercise its eminent domain power. See K.S.A. 2015 Supp. 26-501 *et seq.*; *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.*, 215 Kan. 218, 227, 231, 523 P.2d 755 (1974). Importantly, "'[a] statute which confers the right to exercise the power of eminent domain is to be strictly construed in light of the objectives and the purposes sought to be attained by its enactment.'" *Miller v. Bartle*, 283 Kan. 108, 113, 150 P.3d 1282 (2007) (quoting *Nat'l Compressed Steel Corp. v. Unified Gov't of Wyandotte County/Kansas City*, 272 Kan. 1239, Syl. ¶ 5, 38 P.3d 723 [2002]).

The Bonhams allege WaterOne failed to comply with the EDPA. As relevant to this appeal, we conduct unlimited review over matters of jurisdiction, the interpretation of statutes, and the interpretation of written instruments. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014); *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013); *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 917, 46 P.3d 1120 (2002); *City of*

5

*Wichita v. Meyer*, 262 Kan. 534, 539, 939 P.2d 926 (1997). A brief overview of a proceeding under the EDPA puts the Bonhams' claims in context and clarifies the objectives and purposes of the EDPA.

1. *This action is governed by the nature of condemnation proceedings.*

Eminent domain—the power to take private lands for public use—is essential and inherently governmental. See K.S.A. 2015 Supp. 26-501(c)(2); *Concerned Citizens*, 215 Kan. at 226-27; 26 Am. Jur. 2d, Eminent Domain § 4. But however essential, the government cannot exercise its inherent power to take land for free: The government must justly pay for the land it takes. K.S.A. 26-513(a) ("Private property shall not be taken or damaged for public use without just compensation.").

In Kansas, provisions of the EDPA control the proceedings to the extent the provisions address an issue. In an appeal from an eminent domain award, the code of civil procedure applies. K.S.A. 2015 Supp. 26-508(a) (an eminent domain appeal "shall be tried as any other civil action"); *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 920, 349 P.3d 469 (2015).

Eminent domain proceedings begin when an entity seeking to condemn land files a petition in the district court. K.S.A. 2015 Supp. 26-501(b). Under the EDPA, the entity's petition must include:

> "(1) the authority for and the purpose of the taking; (2) a description of each lot, parcel or tract of land and the nature of the interest to be taken; (3) insofar as their interests are to be taken (a) the name of any owner and all lienholders of record, and (b) the name of any party in possession. . . . No defect in form which does not impair substantial rights of the parties shall invalidate any proceeding." K.S.A. 26-502.

6

In addition, K.S.A. 2015 Supp. 26-503 requires that notice be given to "each interested party as named in K.S.A. 26-502," that is, "any owner," "lienholders of record," and "any party in possession."

Once the petition is filed, the judge must determine from the petition itself (1) whether the entity "has the power of eminent domain" and (2) whether "the taking is necessary to the [entity's] lawful corporate purposes." K.S.A. 2015 Supp. 26-504. When the judge makes those findings in favor of the government entity, appraisers are appointed to conduct a valuation of the land the entity seeks to take. K.S.A. 2015 Supp. 26-504; K.S.A. 2015 Supp. 26-505. Ultimately, those appraisers file a report on the amount of compensation that is just. K.S.A. 2015 Supp. 26-506. Then, to proceed with the taking, the entity must pay that amount within 30 days of the appraiser's report. K.S.A. 2015 Supp. 26-507; *Miller*, 283 Kan. at 113. This court has characterized these proceedings as an "inquest"—an investigation into exactly how much the government owes. Indeed, the proceedings are narrow and not "'a forum for litigation of the right to exercise the power of eminent domain nor the extent thereof.'" *Miller*, 283 Kan. at 113-14.

Here, WaterOne filed its eminent domain petition in the district court. As to the extent of its taking, WaterOne sought to condemn temporary construction easements and permanent water main easements in 10 tracts of land owned by Prairie Center Development in fee simple. The district court appointed appraisers, the appraisers filed reports, and from those reports Prairie Center Development received compensation. There is nothing in this appeal suggesting that WaterOne did not fully comply with the EDPA as to the owners of the land—Prairie Center Development.

The EDPA does provide that if any party is not satisfied with the amount awarded in the appraiser's report the party can appeal to the district court for a trial de novo. But even the trial de novo is narrow: "The only issue to be determined . . . shall be the compensation required by K.S.A. 26-513." K.S.A. 2015 Supp. 26-508(a). In short, EDPA proceedings are intended to be quickly resolved, only concerning (1) the authority to take and (2) just compensation for the taking. Litigation of collateral issues is relegated to other civil actions. *Miller*, 283 Kan. at 114; *State Highway Commission v. Bullard*, 208 Kan. 558, 561-62, 493 P.2d 196 (1972). From the record here, it does not appear that Prairie Center Development or WaterOne filed an appeal under K.S.A. 2015 Supp. 26-508 to challenge the amount of compensation awarded.

What makes this case unique is that the Bonhams—who were never parties to WaterOne's action—filed an appeal. WaterOne had taken a permanent water main easement in Tract 16A, which is a tract of land on which the Bonhams held their own easement. And the Bonhams' easement had become a private roadway known as Stonecrest Road.

Soon after filing the appeal, the Bonhams also filed a motion to void the proceedings for statutory defects. Essentially, the Bonhams claimed WaterOne could not possibly take the permanent water main easement and use it to install a pipeline in Tract 16A without interfering with Stonecrest Road—the Bonhams' easement. So the Bonhams argued WaterOne did not comply with the EDPA's petition requirements because WaterOne took the Bonhams' interest without listing the Bonhams as parties in the petition. See K.S.A. 2015 Supp. 26-503. Additionally, under K.S.A. 2015 Supp. 26-503, the Bonhams argued WaterOne failed to send them the requisite notice of the condemnation proceedings. The Bonhams also argued the district court made two errors

8

that are reflected in the journal entry: The district court read K.S.A. 26-502 and 26-503 as applying only to fee holders, not easement holders, and it considered parol evidence.

In response, before both the district court and this court, WaterOne has consistently argued that it did not include the Bonhams in the action because it never sought to acquire the Bonhams' easement—notably, the plain language in WaterOne's petition condemned an easement in Tract 16A "[s]ubject to existing easements"; in other words, subject to the Bonhams' easement. Likewise, WaterOne argues the district court wholly lacked the jurisdiction to hear the Bonhams' claims.

Before we address the Bonhams' arguments, we address WaterOne's threshold question of whether the district court had jurisdiction to consider the Bonhams' claims.

2. *The district court had jurisdiction to consider the Bonhams' narrow claim that WaterOne's petition was statutorily defective.*

Essentially, WaterOne presents a question of subject matter jurisdiction, which is an issue that can be raised at any time. *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 166, 210 P.3d 105 (2009). Thus, despite the Bonhams' argument that this argument should not be considered because WaterOne did not cross-appeal, we can consider WaterOne's argument.

WaterOne's argument arises, in large part, because the district court heard the Bonhams' claim even though the Bonhams were not originally parties to the condemnation proceedings. As a practical matter, the district court had to determine whether WaterOne took the Bonhams' property interest in order to determine whether WaterOne's petition was statutorily defective for failing to name the Bonhams. Despite

9

their nonparty status, we agree with the district court that it could determine the narrow issue of whether WaterOne's petition contained a statutory defect.

"There is no provision in the [EDPA] precluding a landowner from raising statutory defect arguments in the condemnation proceeding." *City of Wichita*, 262 Kan. at 542. The Bonhams relied exclusively on *City of Wichita* for the authority to file a motion to void the proceedings. And the case does support the Bonhams' ability, as a procedural matter, to file their motion in this case.

In *City of Wichita*, the city initiated condemnation proceedings on multiple tracts for the purpose of constructing an ice rink. 262 Kan. at 535. Although the city sought to condemn Tracts 47 and 48, which R.E.M. Properties (REM) owned, the city did not list REM or mention the tracts in its petition. The public hearing notice, however, did list REM and its two tracts, and the appraisers determined the value of the two tracts at $29,000. Despite its nonparty status, REM filed an appeal and argued a statutory defect (a day later the city amended the petition to include REM and the two tracts). 262 Kan. at 536-37. Because REM was not a party to the initial petition, the city argued the district court did not have jurisdiction over REM's claims. 262 Kan. at 539-40.

Rejecting the city's jurisdictional argument, this court concluded that although the EDPA limits an appeal to the issue of compensation, "raising statutory defects that render the condemnation proceeding void before trial of the appeal [or after the appeal] is not foreclosed." 262 Kan. at 542. This court in *City of Wichita* reasoned that even though REM was not initially a party to the proceedings, as a landowner with rights at stake, it should not have to risk foregoing an appeal of an award by filing a separate action to challenge the validity of the petition. 262 Kan. at 542; 6 Nichols on Eminent Domain § 26A.03[3] (3d ed. 2008) ("[A] description of property to be taken that does not meet the

strict pleading requirements of this allegation will render the entire condemnation proceeding void.").

Thus, under *City of Wichita*, the district court in this case had jurisdiction over the proceedings to narrowly consider the merit of the Bonhams' statutory-defect argument. See also *Dotson v. State Highway Commission*, 198 Kan. 671, 675-76, 426 P.2d 138 (1967) (permitting unnamed owner to join in appeal:  "[A]ny appeal by a landowner, lienholder or interested party brings to the district court for determination in a single action the sufficiency of the award for *all interests* in the tract or parcel of land under condemnation.").

Alternatively, the code of civil procedure gives the district court discretion to permit intervention if the Bonhams presented "a claim . . . that share[d] with the main action a common question of law or fact." K.S.A. 2015 Supp. 60-224(b)(1)(B). WaterOne notes that the Bonhams characterized their motion specifically as a motion to void under *City of Wichita* rather than a motion to intervene. But implicit in the motion to void was an intervention question—whether the Bonhams had an ownership interest sufficient to give them a place in this action. And typically intervention is subject to liberal construction in favor of intervention. *Smith v. Russell*, 274 Kan. 1076, 1083, 58 P.3d 698 (2002). In this procedurally unique case, we do not find that the district court wholly lacked jurisdiction to narrowly consider the Bonhams' claims.

Because the district court had jurisdiction to consider the Bonhams' statutory-defect claim, the next question is whether the district court correctly resolved the motion against the Bonhams. We conclude that it did.

11

3. *The district court was correct that WaterOne's petition contained no statutory defects.*

Certainly, WaterOne's petition did not name the Bonhams or describe their ownership interest in the easement over Tract 16A. If WaterOne intended to condemn the Bonham's interest—either permanently or temporarily—it needed to include them as a party and describe their interest. However, in seeking both a permanent water main easement and a temporary water main easement, WaterOne pleaded that its interests would be "'[s]ubject to existing easements of record.'"

This fact—*i.e.*, that WaterOne was not seeking and has never sought to take the Bonhams' easement—makes this case factually distinguishable from *City of Wichita*. Notably, in *City of Wichita*, there was no question the city sought to take Tracts 47 and 48 from REM. So the city's petition was void for two reasons: (1) It failed to list Tracts 47 and 48, and (2) the city failed to send REM the requisite statutory notice. 262 Kan. at 544-46 ("If the petition fails to list the property to be condemned, it is impossible for the judge to make any of the findings to allow condemnation to go forward as to that property."); see also K.S.A. 26-502 (petition must contain description of property); K.S.A. 2015 Supp. 26-503 (condemning authority must send notice to interested parties). Here, WaterOne has consistently maintained that it is not seeking to take the Bonhams' easement, and the plain language of the condemnation petition is consistent with that position. Had the petition not contained the phrase "'[s]ubject to existing easements of record,'" the Bonhams would have made a valid point.

Nevertheless, the phrase was included, and the language in the petition and the corresponding appraiser's report determined the extent of the property rights taken. *City of Mission Hills v. Sexton*, 284 Kan. 414, 431, 160 P.3d 812 (2007). Thus, WaterOne's petition did not condemn the Bonhams' interest and WaterOne did not obtain the right to

interfere with the Bonhams' interest. (The appraisers' report does not appear in the record on appeal). WaterOne, as the government entity condemning the land, had the exclusive right to determine what lands it needed to take. *Murray v. Kansas Dept. of Transportation*, 239 Kan. 25, 27, 716 P.2d 540 (1986); *Concerned Citizens*, 215 Kan. at 228; 26 Am. Jur. 2d, Eminent Domain § 38 ("The selection of the amount of land necessary for a condemnation is a legislative question to be determined by the condemnor.").

Apparently, WaterOne determined that it needed an easement in Tract 16A but did not need the Bonhams' easement. Generally, "no more property of a private individual, and no greater interest therein, can be condemned and set apart for public use than is absolutely necessary." 26 Am. Jur. 2d, Eminent Domain § 39. Even in this appeal, WaterOne claims that "no . . . taking or damage will result [in the Bonhams' easement] from the exercise of rights acquired." If in WaterOne's estimation it did not believe it needed the Bonhams' easement, it would have been difficult for WaterOne to justify using eminent domain to take it. K.S.A. 2015 Supp. 26-504 (petition must show that taking the land is *necessary*). Indeed, a condemning body "has no authority to appropriate private property for only a contemplated or speculative use in the future." 26 Am. Jur. 2d, Eminent Domain § 40 ("[I]f the condemning body is uncertain when the future use will occur, the future use becomes unreasonable, speculative, and remote as a matter of law and defeats the taking.").

The Bonhams recognize that the petition condemns an interest in Tract 16A "subject to any existing easements." However, they argue that other language in the petition gives WaterOne the right to ignore the Bonhams' easement: "What WaterOne's Petition seems to give with one hand through the 'Subject to any existing easements of record . . .' language, it takes away with the other." This argument fails to persuade us.

13

When interpreting a written document, the intent of the parties controls and is best evinced by the document's unambiguous language. A document's meaning should be gleaned from the document as a whole rather than "the critical analysis of a single or isolated provision." See *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 324, 961 P.2d 1213 (1998). Eschewing this interpretive canon, the Bonhams claim WaterOne can "pretty well do as it pleases" on the Bonhams' easement, pointing to the long and general list of actions WaterOne's petition says it can take on the property it condemns—*e.g.*, "may temporarily excavate or cut through any road."

Contrary to this assertion, WaterOne's interest is expressly limited by the language that indicated any right it sought in Tract 16A was subject to the Bonhams' easement. Regardless of what WaterOne's petition would have given it the right to do if WaterOne had condemned the Bonhams' interest (if the petition had included the Bonhams' easement) or its rights on property interests it did condemn, WaterOne did not condemn the Bonhams' easement and has no legal right to interfere with it. The Bonhams' assertion before the district court that WaterOne would at some point obstruct Stonecrest Road does not mean that WaterOne condemned the easement. See 26 Am. Jur. 2d, Eminent Domain § 240 ("Future apprehended damages . . . claimed to be due because of anticipated . . . operation of the public project, may not be included in the condemnation award since the law furnishes a remedy in the future for recovery of those damages if and when they occur."). The district court did not err in concluding, from the petition, that WaterOne did not take the Bonhams' easement.

The core of the Bonhams' appeal is their claim that WaterOne cannot realistically hope to construct a water line without interfering with Stonecrest Road. That contention might have seemed like a fair possibility when the district court considered the parties'

arguments; it might even prove (or by the time it reached this court have proven) true. If so, WaterOne will have exceeded its legal authority; because of such possibilities, we urge condemning authorities to be scrupulously fair in the exercise of eminent domain, always cognizant of the responsibility that comes with a power so great.

Nevertheless, we are constrained in an eminent domain proceeding by the language the condemning authority uses, its condemnation plans, and the limits of the EDPA. "'A condemnation proceeding instituted under K.S.A. 26-501 *et seq.*, . . . does not provide a forum for litigation over the right to exercise eminent domain *or to determine the extent of said right*. . . . The right . . . to determine other issues *such as the necessity and extent of the taking* can only be litigated in an individual civil action.'" (Emphasis added.) *Miller*, 283 Kan. at 114. We reiterate, the express language in WaterOne's petition—which controls in the very narrow proceedings at issue here—did not condemn the Bonhams' easement.

In fact, WaterOne's discretionary decision to take an interest in Tract 16A and leave the Bonhams with their easement is only subject to judicial review upon a showing of fraud, bad faith, or abuse of discretion. *Murray*, 239 Kan. 27; *Concerned Citizens*, 215 Kan. at 228. First, WaterOne correctly notes that the Bonhams do not argue fraud, bad faith, or abuse of discretion in this appeal. Second, even had the Bonhams made those assertions in this case, those assertions are only proper in an action outside the narrow condemnation proceedings. *Murray*, 239 Kan. at 27; *Concerned Citizens*, 215 Kan. at 225-26, 228.

Under the weight of the authority, the Bonhams cannot prove a statutory defect based on their assertion that WaterOne will necessarily, at some point, interfere with their easement. 6 Nichols on Eminent Domain § 26A.03[1] (It is not "necessary to describe

property that will be damaged if the proposed improvement is constructed"; the condemnor does not intend to damage land it does not take, so those damages are speculative.); see also *Concerned Citizens*, 215 Kan. at 237-39 (condemning authority does not need to show it could fully accomplish its plan prior to taking land); *Weldon v. State*, 495 So. 2d 1113, 1116 (Ala. Civ. App. 1985) (Owners of easement did not need to be named because it was "obvious that the rights of those owning the dominant tenements of the right of way across Lot B are not obstructed in any way by the condemnation of a small, noncontiguous, portion of Lot B. As such, there has been no taking of the dominant tenement or the easement."); *In re Appeal of Heim*, 151 Pa. Cmwlth. 438, 444, 617 A.2d 74 (1992) (No error in failing to name easement owners because "the easements of the additional lot owners will continue to exist over the opened road, just as they existed over the unopened road. The additional lot owners therefore do not have a property interest which has been taken, injured or destroyed."). Consequently, the district court correctly resolved the narrow issue before it. WaterOne's petition was not statutorily defective on its face for omitting the Bonhams and their easement because WaterOne never sought to take—and did not take—the Bonhams' easement.

Notwithstanding WaterOne's intentions, the Bonhams are not, as we have alluded, left without a remedy just because their claims were improper in this case:  Should WaterOne interfere with the Bonhams' easement (or if it has done so), the Bonhams could file a separate action for inverse condemnation. 6 Nichols on Eminent Domain § 26A.03[1]. Indeed, "[i]nverse condemnation is an action initiated by the landowner and is available when private property has been taken for public use without formal condemnation proceedings and where it appears there is no intention or willingness of the taker to bring the action." *City of Wichita v. Meyer*, 262 Kan. 534, 548, 939 P.2d 926 (1997). It seems WaterOne has no intention to file a formal condemnation proceeding as to the Bonhams' easement. So if WaterOne does take or damage the easement, the

16

Bonhams have viable legal options, which they recognized in the hearing before the district court.

Accordingly, we hold WaterOne's petition was valid on its face. We next address the Bonhams' challenges to the district court's journal entry denying their motion to void the condemnation.

4. *The Bonhams fail to establish an error in the journal entry.*

As to their attack on the journal entry in this case, the Bonhams first claim the district court erred as a matter of law by concluding that easement holders are not entitled to notice under the EDPA. Second, the Bonhams assert that the district court improperly relied on parol evidence to conclude that WaterOne did not take their easement. We find no error in the journal entry.

4.1. *An entity must comply with the EDPA when taking an easement.*

The Bonhams assert that the district court made a mistake of law in concluding that only fee owners of property, lienholders, and parties in possession are entitled to statutory notice under the EDPA. We reject this claim because we disagree with the Bonhams' characterization of the district court's legal conclusion.

Citing *Kansas Gas & Electric Co. v. Will Investments, Inc.*, 261 Kan. 125, 132, 928 P.2d 73 (1996), the Bonhams argue this court has recognized easement holders as parties entitled to compensation under the EDPA. See 261 Kan. 125, Syl. ¶ 6 ("Under the facts of this case, the trial court correctly found the owner of a retained easement taken by a condemnor was entitled to the entire amount of the appraiser's award."). They fault

the district court's conclusion that "WaterOne complied with the Eminent Domain Procedure Act, . . . since the [Bonhams] were not the fee holder, lienholders, or parties in possession of" the condemned tract. Indeed, this statement strayed from the statutory language and substituted "fee holder" for the term "owner" in K.S.A. 26-502, and, arguably this change could be read as a failure to account for an easement holder's interest.

Nevertheless, as we have noted, WaterOne has consistently argued it did not include the Bonhams in the action because it never sought to acquire the Bonhams' easement; WaterOne asserts its position was never that those with a preexisting easement would not be entitled to be named in a petition and given notice. WaterOne, for its part, concedes that the EDPA covers the taking of easements. See also 26 Am. Jur. 2d, Eminent Domain § 209 ("The owner of an easement is entitled to compensation when the easement is taken in eminent domain."). This means, according to WaterOne, any misstatement by the district court (assuming there was one) was irrelevant to its ultimate conclusion, which was that WaterOne did not take the Bonhams' property interest. The Bonhams also concede that "being the owner of an easement interest does not entitle one to be named and noticed up if the taking at issue does not interfere with the enjoyment of the easement in question."

Reading the district court's faulted statement regarding fee holders in context, it becomes clear this statement was not the basis for the district court's decision and, in fact, the district court did not conclude that easement holders are never entitled to statutory notice under the EDPA. Rather, the court found that the Bonhams were not entitled to notice because their "easement rights under the plain language of WaterOne's condemnation petition [were] not designated to be taken." As we previously concluded, because WaterOne took Prairie Center Development's property subject to any existing

18

easements, WaterOne did not take the Bonhams' easement, or any existing easement, and only had to name Prairie Center Development, who happened to be the fee holder. Nothing in the record suggests that the district court did not understand that easements could be taken or that it believed the EDPA notice requirements did not apply to easements. We do not find the record to support the Bonhams' argument on this point.

4.2. *The district court did not erroneously rely on parol evidence.*

The Bonhams argue the district court concluded there was no taking only by erroneously relying on WaterOne's project design plan, which was parol evidence outside WaterOne's condemnation petition. The district court's findings of fact did mention WaterOne's project plan. The court found, among other things, that the "project design plans and contract specifications provide that the contractor is 'to construct 12 foot wide temporary access road for neighborhood ingress/egress that is to be accessible at all times.'" We recognize the petition was not the source of that information.

Again, the petition and appraiser's report define the extent of the land condemned, and parol evidence is not admissible to limit the extent of a taking. See *City of Mission Hills*, 284 Kan. at 431 ("'parol evidence will not be admitted for the purpose of establishing a lesser interest based on the condemnor's intended use'"). But WaterOne did not condemn the Bonhams' easement through its petition and then use the project plan to exclude the Bonhams' easement from the condemnation. WaterOne never intended to take the Bonhams' easement, and it explicitly drafted its petition so as not to take the easement.

Granted, the district court did mention parol evidence in its journal entry. But it was the Bonhams who first referenced parol evidence in their motion to void by arguing

that "[a]s part of the construction project it will be necessary to dig up Stonecrest Road in order to put the pipeline underground." Nowhere does the petition say WaterOne will dig up Stonecrest Road; the petition makes no mention of Stonecrest Road.

Generally, a party cannot invite error and then complain of the error on appeal. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203-04, 308 P.3d 1238 (2013). The Bonhams attempted to support their motion to void by arguing that WaterOne would have to dig up Stonecrest Road to complete its project. We find a point WaterOne made before the district court compelling:  Just as WaterOne cannot use its plans to show how it will avoid interfering with the Bonhams' easement, the Bonhams cannot go outside of the petition's language to argue WaterOne will interfere with their easement. The Bonhams invited the district court to hear parol evidence about the project plan in their attempt to prove WaterOne would need their easement. The petition itself simply did not condemn the Bonhams' easement.

Furthermore, even if the district court's discussion of parol evidence was uninvited error, the error was harmless here because it did not affect the Bonhams' substantial rights. See *City of Mission Hills*, 284 Kan. at 434 (Harmless error under K.S.A. 60-261 applies to the admission of evidence in an eminent domain proceeding.); see also K.S.A. 2015 Supp. 60-261 ("[N]o error in admitting or excluding evidence. . . is ground for . . . disturbing a judgment or order [unless the error affects a] party's substantial rights."). Again, despite mentioning parol evidence, the district court relied only on the language of the petition to conclude that the Bonhams' "easement rights . . . are not designated to be taken." So its discussion of the construction plan did not lead to its ruling.

If WaterOne does dig up Stonecrest Road at some point in the future (or, as argued during oral arguments before this court, has already interfered with the Bonhams'

20

property interest), then the Bonhams would have had a claim in a separate action for inverse condemnation. See *City of Wichita*, 262 Kan. at 548.

Finding no error in the district court's decision in this case, we affirm.

Affirmed.

* * *

STEGALL, J., concurring:  I am compelled to concur with today's decision because I agree with our conclusion that "WaterOne's petition did not condemn the Bonhams' interest and WaterOne did not obtain the right to interfere with the Bonhams' interest." Slip op. at 12. And because WaterOne's petition was drafted, on its face, so as not to condemn the Bonhams' easement, the Bonhams' were not statutorily entitled to receive notice of the condemnation proceedings.

At oral argument, the Bonhams' counsel made it clear that his clients were aware of the alternative remedies available to them for the alleged interference with and trespass against their property interest. We discuss some of those alternative remedies above. Counsel further plausibly represented—and we have no reason to doubt—that the Bonhams' reasons for bringing this action (as opposed to an after-the-fact claim for damages) is because they are chiefly concerned with vindicating their perceived right to have received notice of the condemnation proceedings at the outset.

Without question, notice is a fundamental component and policy objective of the Kansas Eminent Domain Procedure Act (EDPA). See K.S.A. 2015 Supp. 26-503. However, the reality our decision today manifests without articulating—a state of affairs

21

deserving explicit acknowledgment—is that the EDPA grants condemning authorities *carte blanche* to consciously limit the scope of the required notice through drafting gamesmanship. If complete and widespread notice is indeed a fundamental policy objective of the legislature, as it appears to be, this case simply illustrates that the statutory language chosen by the legislature fails to implement that policy in an airtight manner.

In response to this failure of statutory language, my colleagues muster the hope that government actors will "be scrupulously fair in the exercise of eminent domain, always cognizant of the responsibility that comes with a power so great." Slip op. at 14. I am not so sanguine. Instead, I am mindful that in the past, when considering the potential for abusive practices in eminent domain proceedings, we have noted that it is difficult to "conceive of a policy of government afflicted with greater potentials for abuse of a private citizen." *Ventures in Property I v. City of Wichita*, 225 Kan. 698, 711, 594 P.2d 671 (1979) (summarizing with approval *Board of Com'rs of State Inst. v. Tallahassee B. & T. Co.*, 108 So. 2d 74 [Fla. App. 1958]).

Left unchecked by flood walls erected either by the people's representatives or by the people's constitution, the power of the state will flow like an encroaching ocean into and through every available chink and crevice. The statutory requirement of prior notice is one such flood wall against the "abuse of a private citizen" in eminent domain proceedings. But in its absence, as today's case aptly demonstrates, condemning authorities are more likely to take advantage of this crack in the law—the better to effect expansive exercise of power—than they are to be "scrupulously fair" and "cognizant of the responsibility that comes with a power so great." Slip op. at 14.

Unfortunately for the Bonhams, their claim is a statutory claim and the failure of the statute to effectively guarantee to them and others like them the right to receive notice can only be remedied in the legislature.