NOT DESIGNATED FOR PUBLICATION

No. 126,162

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID AMIR,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Oral argument held July 25, 2024. Opinion filed August 23, 2024. Affirmed.

*Bruce D. Mayfield*, of Bruce D. Mayfield, Chartered, of Overland Park, for appellant.

*Nhu Nguyen*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: The Kansas Department of Revenue (KDOR) administratively suspended David Amir's driving privileges after he refused an evidentiary breath test. The district court upheld that ruling. Amir now appeals, challenging the district court's initial denial of a motion for summary judgment and its final judgment upholding the driver's license suspension. Amir argues that the district court erred in finding he failed to prove a medical exemption defense under K.S.A. 8-1001(p), but also contends the district court erred in relying on a bodycam video that he claims was not properly admitted into evidence. After a review of Amir's claims, we affirm the district court's decision upholding the administrative suspension of his driving privileges.

1

On April 17, 2021, Officer Tanner Eddings initiated a traffic stop of Amir's vehicle for failing to maintain its lane and having a defective tag light. Amir showed signs of impairment on field sobriety testing and failed a preliminary breath test. Amir declined an evidentiary breath test at the police station. It was this refusal that resulted in the suspension of Amir's driving privileges.

Amir requested an administrative hearing. He claimed that he was entitled to refuse the test because, due to a medical condition—asthma and COVID—he was unable to complete the test. See K.S.A. 8-1001(p) ("Failure of a person to provide an adequate breath sample or samples as directed shall constitute a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs.").

The hearing officer rejected Amir's defense finding K.S.A. 8-1001(p) did not apply because the statute "requires licensee to attempt to provide sample," and that there was "[n]o evidence licensee's medical condition caused him to refuse test. Licensee did not attempt evidentiary breath test."

Amir petitioned for judicial review of his driver's license suspension on the following issues:  (1) lack of reasonable suspicion to initiate or extend the traffic stop; (2) improper certification of testing equipment; (3) failure to provide required notices; and (4) under K.S.A. 8-1001(p), a preexisting medical condition prevented Amir from providing an adequate breath sample, so his failure to complete the breath test should not be considered a refusal.

The KDOR answered, including attachments of the agency record under K.S.A. 77-620. The agency record contained a printout from the Intoxilyzer 9000 reflecting "No

sample given." The record also contained the bodycam video that was taken of the entire encounter. This video was sent to the administrative hearing office by Amir's former attorney, Charles Green. It was made a part of the agency's record at the specific and unequivocal request of Green. Green requested that the administrative hearing officer review the video of the entire encounter and also submitted a letter from Amir's physician's assistant, Julie Knoche, documenting his treatment for asthma and COVID.

In the letter, Green also highlights—by references to time stamps—what is happening in the video, up to the point Amir gives a PBT sample. During that time, according to the partial transcript of the video submitted by Green, Amir told the officer that he was trying to take the PBT test, but he "had COVID." The letter adds that after being transported to the police station, Amir's request for a blood test was rejected and Amir "ultimately declines the Intoxilyzer due to his medical condition."

In the district court, Amir's new attorney, Bruce Mayfield, moved for summary judgment, arguing that Amir was entitled to judgment as a matter of law based solely on the fourth issue raised in his petition:  that K.S.A. 8-1001(p) applied because a preexisting medical condition prevented him from providing an adequate breath.

In an affidavit attached to his motion, Amir narrated his arrest, including that he specifically told Officer Eddings that he had twice been diagnosed with COVID and had other diagnosed medical issues, both which prevented him from exhaling long enough to complete a breath test. Amir also included the same letter and affidavit from Knoche, submitted previously to the agency by Green. In those documents, Knoche explained that Amir had been diagnosed with "asthma, lung tightness, and inability to get enough air into his lungs" and "[u]pon testing in our clinic on September 28, 2021 [which would have been five months after this incident] David Amir was only able to exhale for 2.5 seconds." Knoche also attested that Amir "has a medical condition that would make it impossible for him to exhale his breath for longer than 2.5 seconds. Repeated attempts at

3

lengthy exhalation would cause fatigue and each attempt would be less in length and volume."

In its response, the KDOR challenged several of the uncontroverted facts in Amir's affidavit, particularly those pertaining to statements he made during the traffic stop and subsequent arrest. Throughout its response, KDOR referred to specific parts of the bodycam video that controverted Amir's affidavit and that of his physician's assistant. KDOR used references to the video to controvert 11 factual statements from Amir's summary judgment motion. It also cited Officer Eddings' affidavit attached to the KDOR reply 16 times controverting Amir's affidavit and that of his physician's assistant.

The KDOR also generally disputed whether K.S.A. 8-1001(p) applied, arguing Amir's "refusal to attempt to give a breath sample for the Intoxilyzer 9000 bars him from using K.S.A. 8-1001(p) as a defense." In Officer Eddings' affidavit, he attested that Amir merely stated he had "'vision issues since COVID'" and at no time informed Eddings that he had "any other medical issues that would affect his ability to complete a breath test." Eddings also asserted that Amir never stated "that he could not exhale long or strong enough to provide a breath sample" for the evidentiary breath test.

About two weeks later, Amir filed a reply contending the KDOR had failed to controvert the material facts establishing his medical condition that were asserted in his summary judgment motion. At only one point in his pleading does Amir mention any purported objection to use of the bodycam video. It is mentioned as it relates to whether Amir was cooperative. Amir states, "Additionally, any reference to a video is offered without support required by K.S.A. 60[-]256(e) here and throughout [KDOR]'s Response."

The next day at the hearing on the summary judgment motion, Mayfield's argument focused on addressing whether Amir had presented sufficient evidence of

4

uncontroverted facts to show that K.S.A. 8-1001(p) applied, but he also touched on whether the video had "evidentiary foundation." Mayfield stated, "The officer didn't say [in his affidavit] it was an accurate, complete copy. It has just been forwarded to the Court, and I am not sure that is appropriate under the . . . Rules of Civil Procedure[.]"

During KDOR's argument, the district court repeatedly questioned whether the KDOR had presented anything to controvert the medical evidence Amir had presented. The court also mentioned needing to see the video to "see what actually transpired in that room." Near the conclusion of the hearing, the court remarked that "[t]he only evidence we have in this case are three affidavits" from "[t]he police officer, the Petitioner and the physician's assistant and then whatever the record is, the agency record." KDOR noted that the evidence also included the video. The district court judge stated:

> "I am assuming that there isn't any foundational issues as to the video. I certainly will watch the video, because I don't—if anything, this may boil down to us eliminating a lot of fact issues for any trial that we actually do have."

To that, Mayfield responded, "Right, Judge. That was a big part of why what I said when I first started this hearing. I am very interested in eliminating some of the issues and especially the medical testimony."

The district court ultimately denied Amir's motion for summary judgment in a written order on August 25, 2022, finding at the outset of the statement of facts section that "Petitioner did not object to the authenticity of the bodycam footage, and thus, the Court finds the contents of the video to be uncontroverted." The court then concluded, based on an extensive review of Officer Eddings' bodycam video, that many of the uncontroverted facts asserted in Amir's summary judgment motion were refuted by the contents of the video. Although the video showed Amir twice mentioned having COVID, the court found at no point did Amir specifically tell Officer Eddings that he could not

5

submit to a breath test because of COVID complications or other medical issues. The court also found that the video contradicted the physician assistant's statement that it would be "'impossible for [Amir] to exhale his breath for longer than 2.5 seconds'" since the video showed he "provide[d] a seven-second breath sample on his seventh try [on the preliminary breath test]." Thus, the court concluded Amir was not entitled to summary judgment based on K.S.A. 8-1001(p) because he had failed to show the defense was meritorious as a matter of law. The court summarized that there were controverted issues—whether he could give a breath sample for more than 2.5 seconds and whether he advised the officer of a reason he was refusing the Intoxilyzer test—that the case could not be decided on a summary judgment motion.

Amir moved to alter or amend the district court's summary judgment ruling prior to the scheduled bench trial on Amir's petition for judicial review. In the motion, Amir challenged the district court's reliance on the bodycam video, arguing the KDOR failed to lay a suitable evidentiary foundation to admit the video as evidence at the summary judgment hearing and that the video lacked authenticity. Amir also argued the court ignored Supreme Court Rules by not properly citing the record in the statement of facts section of its written ruling and not making findings in separately numbered paragraphs.

The district court discussed Amir's motion to alter or amend at the beginning of the bench trial, noting it had reviewed "the Zoom record of our [summary judgment] hearing" and determined "I specifically asked if there was going to be any foundational issues with regard to the video body cam" and "didn't hear a word from anyone." The court then asked if the "body cam foundation [was] in issue?" Mayfield responded, "[A]bsolutely," then proceeded to explain that his recollection of the summary judgment hearing was that he "clearly indicated it was inappropriate to discuss issues related to the video." Mayfield explained that he had addressed the objection in the reply to the KDOR's response to the summary judgment motion. After further discussion, the court advised the KDOR that it would need to lay the foundation for the video at the hearing, to

which Nguyen responded, "Okay. I can lay that today, Your Honor." Mayfield expressed his dissatisfaction with the ruling, the court noted that dissatisfaction, and asked the parties to proceed.

Amir testified that he was having "[r]espiratory issues involving breathing" at the time of his contact with Officer Eddings. Amir added that he had a history of "constant sinus issues as well as lung issues ever since I was a kid [with] more difficulty with my lungs as I got older." He had undergone two sinus surgeries "in an effort to assist with breathing," was diagnosed with asthma, "suffered from COVID multiple times which also injured my lungs," and treated for sleep apnea. Amir recalled undergoing spirometry testing, which required him to "blow out as much as I can, and then they give me medication and see if I can increase the amount of air that I can relieve from my lungs."

Amir also recalled his unsuccessful attempts to perform the preliminary breath test, explaining that "I told [Officer Eddings] that I am having trouble but I am trying, that I have had COVID in the past and it has been difficult." Amir described having physical sensations at the time that were "[s]imilar to the sensations that I get when working extremely hard with my lung issue," such as "[h]ands and face become tingly[,] becom[ing] faint[,] tightness and pain in my lungs and chest and I start to—not being able to get air in. It becomes a lot of work and focus to get air into my lungs." When Officer Eddings asked if Amir would take an evidentiary breath test at the police station, Amir declined by simply saying "No." When asked if he told Officer Eddings "why," Amir further responded he "had already told him in the field." Amir also acknowledged not describing how he felt "to the extent that I probably should have."

On cross-examination, Amir stated "[t]o my best recollection" that he told Officer Eddings the statements in paragraphs 17 and 18 of his affidavit submitted as part of his summary judgment motion (asserting that he specifically told Officer Eddings that he could not exhale for sufficient duration or with sufficient strength to complete the breath

7

test due to recovering from "the COVID-19 infection"). Amir admitted he did not tell Officer Eddings about having asthma or that he used a daily inhaler.

Officer Eddings testified about the traffic stop. He stated that he was wearing a bodycam at the time, which recorded the entire encounter from before the traffic stop to when Amir left the police station. Eddings testified that he asked Amir to complete a preliminary breath test and Amir agreed. After four unsuccessful attempts by Amir to produce a sufficient breath sample, Amir told Officer Eddings he "had COVID" and "is trying to pass the test." Eddings did not recall Amir stating he would be unable to complete the preliminary breath test or expressing any physical discomfort or pain because of his efforts. Amir eventually produced a sufficient breath sample on his seventh attempt. Officer Eddings said he had to tell Amir to stop blowing once the test was complete. During the preliminary breath testing, Eddings could not recall Amir ever stating that he would be unable to complete the test based on having had COVID or that Amir was experiencing any pain or discomfort.

Officer Eddings arrested Amir and transported him to the police station, where he read and provided Amir a copy of the DC-70, the implied consent advisory form, and asked Amir if he would submit to an evidentiary breath test. Amir refused to provide a breath sample and gave no further explanation. During the observation period Amir asked to do a blood test instead, but Officer Eddings explained he was only offering the breath test. Once the observation period ended, Officer Eddings recorded that Amir refused the evidentiary breath test on the DC-27 form.

Throughout Officer Eddings' testimony, the KDOR played portions of the video in open court, without any objection by Amir. Nguyen offered the video into evidence as Respondent's Exhibit A, to which Mayfield stated there were "[n]o objections to the portions that the Court observed today." Thus, the district court admitted the exhibit.

8

After both parties rested, the district court issued an oral ruling affirming the administrative suspension of Amir's driving privileges. In particular, the court found that "based on . . . the totality of everything I have seen here today, it is clear that . . . whether or not Mr. Amir was unable to take the Intoxilyzer test was never made apparent to the police officer."

On October 4, 2022, the district court entered its journal entry of judgment. Relevant to this appeal, the order concluded:

> "14.    Petitioner was served with an order suspending his driver's license on October 26, 2021, after Petitioner refused a chemical breath test requested by Officer Tanner Eddings of the Mission Police Department pursuant to K.S.A. 8-1001.
> "15.    During trial, the Petitioner conceded its position regarding: (1) whether reasonable grounds existed in order for Officer Eddings to request a chemical breath test; (2) whether the DC-70 was properly served; and (3) whether the required notices were lawful, correct, misleading, and coercive.
> "16.    The court finds that based on the preliminary breath test, Petitioner can exhale for at least eight (8) seconds. [In a footnote:] The Court further finds that, as a result of video evidence of Petitioner exhaling for at least eight (8) seconds, Petitioner's refusal to submit to the Intoxilyzer was not justified by any medical condition.
> "17.    Therefore, the court finds the order of suspension served upon Petitioner on September 1, 2022 is hereby affirmed."

On November 14, 2022, Amir moved to alter or amend the district court's journal entry of judgment, asserting the district court failed to properly rule on his motion to alter or amend the summary judgment ruling or otherwise note it in the final journal entry.

On December 20, 2022, the district court denied Amir's motion to alter or amend the journal entry of judgment, also stating it was denying his motion to alter or amend the summary judgment ruling. In the order, the court explained that it "never addressed the motion to alter or amend [the summary judgment ruling], viewing it mooted by the

9

Court's ruling at trial [because it] sought the same relief . . . and [Amir] had the opportunity to present a more robust evidentiary record, complete with cross-examination and credibility determinations." As for the bodycam video, the court found that Amir "did not object to the foundation of the video during trial" and concluded it was properly admitted and considered.

Amir timely appealed.

ANALYSIS

I.      Amir Is Procedurally Barred from Challenging the Denial of His Summary Judgment Motion After a Bench Trial on the Merits

A party generally may not "'appeal an order denying summary judgment after a full trial on the merits' because that 'order retains its interlocutory character as simply a step along the route to final judgment.'" *Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co.,* 51 Kan. App. 2d 459, 490, 350 P.3d 1091 (2015) (quoting *Ortiz v. Jordan*, 562 U.S. 180, 184, 131 S. Ct. 884, 178 L. Ed. 2d 703 [2011]). The *Evergreen* court determined that "[a] party who has lost on summary judgment may preserve legal issues or defenses for appeal by incorporating them into a trial motion for judgment as a matter of law. See K.S.A. 2013 Supp. 60-250(a)(1); K.S.A. 2013 Supp. 60-252(c)." 51 Kan. App. 2d at 490. "Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion." *Ortiz*, 562 U.S. at 184.

Although the defendants in *Evergreen Recycle* had requested judgment as a matter of law at the close of trial, this court declined to review the summary judgment ruling because the defendants had not specifically appealed the denial of the motion for judgment as a matter of law. Cf. *Budd v. Walker*, 60 Kan. App. 2d 189, 197, 491 P.3d

10

1273 (2021) (considering summary judgment arguments on appeal "in the context of [a] trial motion for judgment as a matter of law").

That said, the United States Supreme Court recently clarified in *Dupree v. Younger*, 598 U.S. 729, 735, 143 S. Ct. 1382, 215 L. Ed. 2d 636 (2023), that "purely legal issues—that is, issues that can be resolved without reference to any disputed facts," need not be preserved in a posttrial motion to be reviewable on appeal. The Court reasoned that "[t]rials wholly supplant pretrial factual rulings, but they leave *pretrial legal rulings undisturbed*." (Emphasis added.) 598 U.S. at 735. Because a summary judgment ruling resolving purely legal issues is not superseded by the development of a new factual record at trial, "these rulings follow the 'general rule' and merge into the final judgment, at which point they are reviewable on appeal." 598 U.S. at 735. *Dupree*, thus, contradicts the blanket holding from *Evergreen* that a party must incorporate any legal issues raised in a denied motion for summary judgment into a posttrial motion for judgment as a matter of law to preserve it for appeal.

In other words, Amir's failure to move for judgment as a matter of law at any point during the bench trial would only preclude appellate review of the factual claims raised and denied in his summary judgment motion. So what are the claims of error related to the summary judgment motion that are not preserved due to the subsequent bench trial?

    A. *Consideration of the bodycam video without proper foundation in response to the summary judgment motion*

The primary issue Amir raises related to his denied summary judgment motion concerns the district court's consideration of the bodycam video, which he asserts was improper because the KDOR failed to lay a proper evidentiary foundation to admit the video in response to his summary judgment motion. The KDOR disagrees, pointing out— as the district court concluded—that Amir did not object to foundation when directly

11

asked at the summary judgment hearing. Based on *Ortiz*, Amir needed to incorporate any evidentiary foundation challenge related to the district court considering the bodycam video into a posttrial motion for judgment as a matter of law to preserve that issue for appeal. But because Amir allowed portions of the bodycam video to be admitted at the bench trial without objection, we find that this issue was not preserved for appeal.

Even if he had objected, counsel fails to address the fact that a review of the agency record submitted by the KDOR under K.S.A. 77-620(a) shows that Amir's previous counsel sent a letter asking the KDOR hearing officer to review a "DVD containing the Body Camera footage from Officer Eddings" before issuing its decision. Not only does this establish that Amir never challenged the use of the video at the administrative hearing, but it also shows he *introduced the same evidence he now disputes*. A party cannot invite error and then complain of that error on appeal. *Water Dist. No. 1 of Johnson Co. v. Prairie Center Dev.*, 304 Kan. 603, 618, 375 P.3d 304 (2016).

And finally, judicial review of a decision by an administrative agency is limited to the issues raised at the administrative hearing. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 411-12, 204 P.3d 562 (2009). Unless an issue is first raised at the administrative hearing, it may not be raised during the district court's de novo review conducted under K.S.A. 8-259(a).

This preservation requirement includes evidentiary objections that were not made at the administrative hearing. See *Zurawski v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 325, Syl. ¶ 4, 851 P.2d 1385 (1993) (holding that KDOR's failure to contest admissibility of evidence at administrative hearing precluded raising the issue on judicial review, even under de novo review by district court).

Amir needed to challenge the admission of the bodycam video first at the administrative hearing before he could raise that issue with the district court. He did not. As a result, he is precluded from raising it before the district court or us.

B. *Improper weighing of the contents of the bodycam video against the "uncontroverted" medical testimony Amir submitted in support of his motion*

Amir's second summary judgment issue is closely tied to his first, in that he asserts the district court improperly weighed the contents of the bodycam video against the "uncontroverted" medical testimony he submitted in support of his summary judgment motion. In addition to being built on Amir's mistaken belief that the district court should not have considered the bodycam video, this claim also need not be considered on appeal because it falls squarely within the district court's factual conclusion that the KDOR came forward with evidence to show a genuine dispute of material fact, resulting in the denial of Amir's summary judgment motion. See K.S.A. 2023 Supp. 60-256(c)(2); *Trear v. Chamberlain*, 308 Kan. 932, 935-36, 425 P.3d 297 (2018).

If there is any question as to the credibility of witnesses or the weight of evidence, summary judgment should be denied. *Sly v. Board of Education*, 213 Kan. 415, 423, 516 P.2d 895 (1973) (quoting *Hastain v. Greenbaum*, 205 Kan. 475, 481, 470 P.2d 741[1970]). Although Amir is correct that the KDOR presented nothing to directly controvert whether he had the medical conditions, establishing a medical condition alone does not determine whether K.S.A. 8-1001(p) applies. Even under Amir's preferred interpretation of the statute, he needed to prove "that the failure was *due to physical inability* caused by a medical condition unrelated to any ingested alcohol or drugs." (Emphasis added.) K.S.A. 8-1001(p). In other words, if the KDOR came forward with evidence suggesting that Amir was physically able to provide a breath sample, that would create a genuine dispute of material fact to preclude summary judgment.

13

KDOR provided an affidavit from Officer Eddings and a bodycam video establishing that in the moments before the test refusal, Amir had successfully provided a breath sample on a PBT on his seventh attempt. The district court added that the bodycam video contradicted portions of Amir's affidavit regarding statements he claimed were made during the traffic stop, as well as specifically contradicted Knoche's medical opinion that it would be "impossible for [Amir] to exhale his breath for more than 2.5 seconds" since the video showed him exhaling for longer when performing the PBT tests.

We find that Amir is procedurally barred from challenging the denial of summary judgment on this factual issue since the case proceeded to a bench trial on the merits and he failed to incorporate it into a trial motion for judgment as a matter of law.

C. *Erroneously interpreting K.S.A. 8-1001(p) as requiring a driver to "attempt" a breath test before a failure to submit to testing can be deemed a refusal*

Amir's third summary judgment issue also raises factual questions that would be procedurally barred for the same reason, with one exception. Amir asserts in his brief that the district court erred in interpreting K.S.A. 8-1001(p) as requiring a driver to "attempt" a breath test before a failure to submit to testing can be deemed a refusal. While this would be the type of legal claim that would be reviewable on appeal under *Dupree*, Amir completely misreads the district court's interpretation of K.S.A. 8-1001(p) in its denial of the summary judgment motion. See *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022) (statutory interpretation raises a legal question subject to unlimited appellate review). Contrary to Amir's issue statement, the district court specifically ruled that "[K.S.A.] 8-1001(p) applies both *to those who refuse to provide a sample* and those who attempted to provide a sample, but were unable." (Emphasis added.) Put simply, Amir is trying to challenge a legal ruling the district court never made at the summary judgment stage.

Briefly, we address Amir's repeated suggestion throughout his brief that the district court committed some procedural error by conducting the bench trial and issuing a written journal entry of judgment before finally resolving Amir's motion to alter or amend the denial of summary judgment. Amir raises this point incidentally, fails to fully brief it, and provides no relevant supporting authority for his argument, so we can properly consider the point waived or abandoned. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017).

Even if we were to ignore the video evidence and rely solely on the affidavits presented, the same conflicting evidence was outlined in the three affidavits presented.

II.     The District Court Did Not Err in Upholding the KDOR's Order Suspending Amir's Driving License

Amir argues the district court erred in affirming the administrative suspension of his driver's license after a bench trial on the merits. Amir contends that his refusal to submit a breath test was justified by K.S.A. 8-1001(p) due to a physical inability caused by a medical condition unrelated to any ingested alcohol or drugs.

A. *The Kansas Judicial Review Act applies, and Amir bears the burden of proving the invalidity of the agency's action.*

Appeals of the administrative suspension of driver's licenses are subject to review under the Kansas Judicial Review Act. K.S.A. 8-259(a); K.S.A. 8-1020(o), (p); *Rosendahl*, 310 Kan. at 480. As the party asserting error, Amir bears the burden of proving the invalidity of the agency action. See K.S.A. 77-621(a)(1); K.S.A. 8-1020(q).

15

B.  *Our standard of review is examined.*

Appellate courts review a district court's factual findings in driver's license suspension cases for substantial competent evidence. The district court's legal conclusions deriving from those factual findings are reviewed de novo. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019); *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). Substantial competent evidence is evidence that possesses both relevance and substance and furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Creecy*, 310 Kan. at 469. Appellate courts must not reweigh evidence but must determine whether the record supports the district court's findings. See *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 171-72, 473 P.3d 869 (2020).

Contrary to the KDOR's assertion in their brief, appellate courts no longer extend deference to either an agency or district court's interpretation of statutes administered by a particular agency. *Hanson v. Kansas Corporation Comm'n*, 313 Kan. 752, 762-63, 490 P.3d 1216 (2021). This court exercises unlimited review of questions involving statutory interpretation. *Kelly*, 316 Kan. at 224.

C.  *Amir's license was suspended for a test refusal.*

To begin, there is no dispute that Amir's driving privileges were suspended based on a "test refusal" rather than a "test failure." A "[t]est failure" only occurs when the "results of a test administered pursuant to this act, other than a preliminary screening test, . . . show an alcohol concentration of 0.08 or greater." K.S.A. 8-1013(h). And a "[t]est refusal" occurs when a person "fail[s] to submit to or complete any test of the person's blood, breath, urine or other bodily substance, other than a preliminary screening test, in accordance with this act." K.S.A. 8-1013(i). According to Officer Eddings' testimony at trial, Amir refused to take the evidentiary breath test at the police station after his arrest

16

and did not explain why he was refusing. Nor is there any evidence in the record of Amir submitting to any evidentiary breath test, so the only reason the KDOR could have suspended his driving privileges was based on a test refusal.

  D. *Substantial competent evidence supports the district court's finding that Amir's refusal to submit to the breath test was not justified by any medical condition.*

Amir claims his driving privileges should not have been suspended by the KDOR because the circumstances of his test refusal fell within a medical exemption provided by K.S.A. 8-1001(p).

  "Failure of a person to provide an adequate breath sample or samples as directed shall constitute a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs." K.S.A. 8-1001(p).

According to Amir, the plain language of this provision only requires a driver to prove that they were physically unable to provide a breath sample due to a medical condition, which does not require an actual "attempt."

The KDOR disagrees, arguing that the statute applies only when a driver attempts a breath test but fails to produce an adequate sample—not when a licensee outright refuses to submit to a breath test. The basic premise of the KDOR's argument assumes there is a legally significant difference between a driver who refuses to "submit to" a breath test and one who submits to a breath test but then refuses to "complete" the test.

We need not determine the meaning of the statute, because under either interpretation there was substantial competent evidence to support the district court's finding that Amir's refusal to submit to the evidentiary breath test "was not justified by

17

any medical condition" because "based on the preliminary breath test, Petitioner can exhale for at least eight (8) seconds."

Amir presented evidence other than his own statements to support a medical exemption defense, but he is not entitled to a different outcome simply because he presented that evidence. According to the district court, the contents of the bodycam video contradicted Knoche's medical opinion that it would be impossible for Amir to exhale longer than 2.5 seconds. Along with the video, trial testimony provided substantial competent evidence to contradict Amir's claims of physical inability to submit a breath sample, since Officer Eddings and Amir both testified at trial that Amir completed a PBT after the traffic stop, well before the evidentiary breath test request at the police station.

In short, we find there was substantial competent evidence presented to support the district court's finding that Amir failed to prove that his test refusal was justified because he was physically unable to submit to or complete a breath test due to a medical condition. Therefore, we affirm the district court's ruling upholding the administrative suspension of Amir's driving privileges.

Affirmed.