NOT DESIGNATED FOR PUBLICATION

No. 118,479

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

DONNA KAY PORTERFIELD,
*Appellant*,

and

DENNIS ALLEN PORTERFIELD,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court, JAMES F. VANO, judge. Opinion filed February 22, 2019. Affirmed.

*Adina F. Morse* and *Curtis G. Barnhill*, of Barnhill & Morse, P.A., of Lawrence, for appellant.

*Ernest C. Ballweg*, of Johnston, Ballweg & Modrcin, L.C., of Overland Park, for appellee.

Before BUSER, P.J., POWELL, J., and STUTZMAN, S.J.

POWELL, J.: Donna Kay Seley (formerly Porterfield) appeals the district court's denial of her motion for the entry of a Qualified Domestic Relations Order (QDRO) on Dennis Allen Porterfield's pension under the final divorce decree. The district court denied the May 2017 motion, holding that the 1998 divorce judgment awarding Donna an equal interest in the pension was extinguished under K.S.A. 2017 Supp. 60-2403 and *In re Marriage of Larimore*, 52 Kan. App. 2d 31, 362 P.3d 843 (2015), *rev. denied* 305 Kan. 1252 (2017). Donna now appeals and asks to either depart from or distinguish *Larimore*.

1

For reasons we more fully explain below, we decline to do either and, therefore, affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Donna and Dennis married in 1980, and, after 17 years of marriage, Donna filed for divorce. With the assistance of counsel, Donna and Dennis entered into a settlement agreement which included the division of the parties' property. Among other things, the property division stated that "[Dennis'] General Motors pension benefits shall be divided equally between the parties pursuant to a Qualified Domestic Relations Order [(QDRO)], and the Court shall have continuing jurisdiction to enter and amend such order a[s] may be necessary to effectuate the division of property." The property settlement agreement was effective as of the date of execution by the second person to sign it. Each person signed and dated the agreement on May 27, 1998. Also on May 27, 1998, the district court found the agreement to be fair, just, and equitable and incorporated it into the final divorce decree. The decree also provided that "the executory provisions thereof not heretofore performed shall be enforced by the Court, which retains jurisdiction of the parties and subject matter therefor."

In May 2017, Donna filed a Kansas Supreme Court Rule 170 (2019 Kan. S. Ct. R. 222) notice for the entry of a QDRO. Although the record does not include the written notice, the parties presented argument and some evidence at a later hearing. Towards the end of the hearing, Donna amended her notice to a motion for entry of a QDRO. In response, Dennis argued the district court should deny the motion because (1) the 1998 judgment dividing the pension had been extinguished under K.S.A. 2017 Supp. 60-2403 and *In re Marriage of Larimore* and (2) the doctrine of laches barred her claim. However, Dennis withdrew his laches defense at the hearing.

2

Donna testified that she believed the settlement agreement provided her with 50% of Dennis' pension when he retired and that he had worked at General Motors during the 17 years of the marriage. Donna said that she had not heard of a QDRO before the divorce proceedings and, at the time of the divorce, she believed that she would receive a lump sum payment for her portion of the pension. Donna admitted she knew a QDRO was required in order for her to receive her interest in Dennis' pension, but she believed Dennis' divorce attorney, Steve Sickel, would enter the QDRO. In support, Donna submitted a letter dated June 10, 1998, that was sent by her divorce attorney, Judy Simon, to Sickel. In the letter, Simon wrote that the attorneys agreed Sickel would prepare the QDRO and Donna requested her portion in a lump sum. Donna stated that she believed Sickel had completed the QDRO.

In 2013, however, Simon telephoned and informed Donna she learned that Sickel had never prepared the QDRO and Simon needed Dennis to sign some paperwork for her to complete one. After speaking with Simon, Donna contacted Dennis. Donna testified Dennis agreed to sign a letter allowing Simon to move forward. Donna stated that Simon gave her the letter, she gave it to Dennis, and Dennis told Donna he would sign it. Donna believed him. In April or May 2016, Donna learned Dennis was taking early retirement so she telephoned Simon. Simon informed Donna she never received the letter from Dennis.

At the end of the hearing, the district court denied Donna's motion for entry of a QDRO, holding that Donna's interest in Dennis' pension under the 1998 divorce decree had been extinguished under K.S.A. 2017 Supp. 60-2403 and the *Larimore* decision. The district court also held that Dennis and his attorney did not mislead Donna into doing nothing to protect her interest in the pension.

Donna timely appeals.

3

DID THE DISTRICT COURT ERR IN DENYING DONNA'S MOTION FOR
ENTRY OF A QUALIFIED DOMESTIC RELATIONS ORDER?

Although the parties address the appeal differently, we see the main issue before us as whether Donna may execute upon the 1998 divorce judgment that equally divided between the parties Dennis' pension, governed by the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. (2012). The district court denied Donna's motion for entry of a QDRO, holding the 1998 judgment dividing the pension had been extinguished under the dormancy statute and the reasoning of this court's decision in *In re Marriage of Larimore* applied. In response, Donna asks us to depart from or find *Larimore* distinguishable for various reasons.

A.      *Standard of review*

"[W]e conduct unlimited review over matters of jurisdiction, the interpretation of statutes, and the interpretation of written instruments." *Water Dist. No. 1 of Johnson Co. v. Prairie Center Dev.*, 304 Kan. 603, 606, 375 P.3d 304 (2016).

B.      *A summary of the applicable law*

A "judgment" is defined as "the final determination of the parties' rights in an action." K.S.A. 2017 Supp. 60-254(a). Our Supreme Court has elaborated that

> "[i]t is a fundamental rule that a judgment should be complete and certain in itself, and that the form of the judgment should be such as to indicate with reasonable clearness the decision which the court has rendered, so that the parties may be able to ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement in the manner provided by law. [Citations omitted.]" *Bandel v. Pettibone*, 211 Kan. 672, 677, 508 P.2d 487 (1973).

4

"K.S.A. . . . 60-2403[a] speaks of 'any judgment' of any court of record in this state. The statute . . . is broad enough to include a judgment awarding a specific lien on specific real estate as well as a monetary judgment . . . ." *Bank IV Wichita v. Plein*, 250 Kan. 701, 706, 830 P.2d 29 (1992). "[T]he division of property made by a trial court in a divorce is a judgment." 250 Kan. at 706. "A property settlement agreement confirmed in a divorce decree, while retaining its character as a contract, becomes as well a judgment of the court." *Long v. Brooks*, 6 Kan. App. 2d 963, Syl. ¶ 1, 636 P.2d 242 (1981).

The dormancy statute, K.S.A. 2017 Supp. 60-2403, states:

"(a) (1) Except as provided in subsection (b), if a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. When a judgment becomes and remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so.

(2) A 'renewal affidavit' is a statement under oath, signed by the judgment creditor or the judgment creditor's attorney, filed in the proceedings in which the judgment was entered and stating the remaining balance due and unpaid on the judgment.

. . . .

"(c) The time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited."

5

According to the dormancy statute:

> "'[A] party may, by the issuance of an execution every five years, keep a judgment alive indefinitely. The judgment remains in force without execution for five years, and the plaintiff may revive it at any time within two years if it has become dormant thereafter, so that a plaintiff may neglect his judgment for seven years, lacking a day, and then revive it and put it in force for five years more.' [Citation omitted.]" *DeKalb Swine Breeders, Inc. v. Woolwine Supply Co.*, 248 Kan. 673, 677, 809 P.2d 1223 (1991).

The five-year period before a judgment becomes dormant is not a statute of limitation. See *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 646, 270 P.3d 1074 (2011), *cert. denied* 568 U.S. 928 (2012)."Once a judgment grows dormant, however, and is not revived pursuant to K.S.A. . . . 60-2404, it becomes absolutely extinguished and unenforceable." *Cyr v. Cyr*, 249 Kan. 94, 97, 815 P.2d 97 (1991).

C.      In re Marriage of Larimore

Kansas courts have recognized QDROs as "the approved method for transferring retirement accounts among parties involved in divorce proceedings." *In re Marriage of Behnke & Ingram*, No. 112,233, 2015 WL 1311014, at *1 (Kan. App. 2015) (unpublished opinion). Because the district court denied Donna's motion for entry of a QDRO based on the reasoning in *In re Marriage of Larimore* and the parties dispute whether *Larimore* applies, a thorough review of the decision is required.

In *Larimore*, the district court incorporated David and Janice Larimore's settlement agreement—which "award[ed] each spouse 60% of their own retirement accounts and 40% of the other spouse's retirement accounts"—into the final divorce decree. It was undisputed that ERISA governed the retirement accounts, and neither party filed a QDRO after entry of the final decree. About 12 years later, David moved the

6

district court to declare the judgment void and unenforceable under K.S.A. 2014 Supp. 60-2403. In response, Janice moved the district court to compel entry of a QDRO and argued the dormancy period had not started because there was no federal statute of limitations on the entry of a QDRO and the retirement accounts were not yet payable. The district court agreed with David, holding the judgment had been extinguished under K.S.A. 60-2403.

On appeal, the panel affirmed the district court and held:

"[C]ourt-ordered transfers of retirement benefits are amenable to execution and, thus, they are not exempt from the dormancy statute. Although the divorce decree established Janice's right to receive a portion of David's retirement accounts, ERISA's anti-alienation provision preempts the divorce court's [domestic relations order] because it does not comply with ERISA's requirements for QDROs. As a consequence, *Janice was required to execute upon the judgment by filing a QDRO in order to enforce her right to receive benefits under David's retirement accounts*." (Emphasis added.) 52 Kan. App. 2d at 41.

The panel further held that

"the division of a party's retirement account in a divorce decree constitutes a judgment subject to dormancy under K.S.A. . . . 60-2403, when . . . the division qualifies as a final determination of the parties' interests in the marital estate. . . . Janice waited until after the district court's judgment dividing the parties' retirement benefits was extinguished by the dormancy statute before attempting to procure a QDRO. As a consequence, her almost 12-year delay left her without a judgment to enforce." 52 Kan. App. 2d at 42.

Finally, the *Larimore* panel found:

"Upon a plain reading of the dormancy statute, we hold that K.S.A. 2014 Supp. 60-2403(c) does not toll the running of the dormancy period for a judgment in a divorce decree which divides retirement plans governed by ERISA. We arrive at this conclusion

7

because the legal process for enforcing such a judgment—the filing of a QDRO—is not stayed or prohibited until the benefits become payable. *On the contrary, the filing of a QDRO is mandatory if the alternative beneficiary is to enforce his or her judgment.* Although Janice may not have been able to *receive money* from David's retirement accounts during the ensuing 12 years, the necessary *legal process*—a QDRO—for enforcing Janice's interest in the retirement accounts was fully available to her.

"In conclusion, we hold the district court did not err when it found the judgment dividing David's retirement accounts had become absolutely extinguished and unenforceable due to Janice's failure to file a QDRO or a renewal affidavit within 7 years of the filing of the divorce decree." (Emphases added.) 52 Kan. App. 2d at 44.

D.     *The merits*

On appeal, Donna argues the district court erred because: (1) the district court's reservation of jurisdiction meant the 1998 divorce decree was not final; (2) *Larimore* was wrongly decided and should be departed from; (3) *Larimore* is distinguishable; and (4) *In re Marriage of Strom*, 56 Kan. App. 2d 656, No. 118,676, 2019 WL 166571 (filed January 11, 2019), compels a different result. We address each of these arguments in order.

1.     *Did the district court enter a final judgment in the 1998 divorce decree when it reserved continuing jurisdiction to enter or amend a QDRO?*

Donna first argues the district court's express reservation of continuing jurisdiction to enter or amend a QDRO distinguishes this case from *Larimore* and means the 1998 judgment dividing Dennis' pension did not become a final judgment until the district court entered a QDRO. Donna's claim, however, obscures the district court's ability to reserve continuing jurisdiction so as to enter or amend a QDRO in the future with the finality of the judgment entered in the final divorce decree.

8

Our review of settlement agreements is

"'subject to normal rules regarding contract interpretation, which require de novo review.'
. . .

"'A property settlement agreement incorporated into a divorce decree is "a hybrid in the law having the characteristics of a judgment and retaining the contractual rights of the parties." "[T]he confirmation of the agreement and its merger into the decree does not abolish the contractual aspects of the agreement, but leaves the court in the position to construe the provisions of the agreement consistent with the facts and circumstances and the expressed intentions of the parties." A written instrument may be construed and its legal effect determined by the appellate court. "The primary rule of construction of a settlement agreement in connection with a divorce action is that, if possible, the court must, as in other contract cases, ascertain and give effect to the mutual intention of the parties at the time the contract was made." The intent of the parties to a separation agreement must be determined from the agreement alone if the terms are unambiguous.' [Citations omitted.]" *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 939-40, 381 P.3d 490 (2016).

"Under the Kansas Constitution, district courts 'have such jurisdiction in their respective districts as may be provided by law.' Kan. Const. art. 3, § 6. Hence, it is the legislature which sets the extent of district court jurisdiction." *In re Marriage of Crane*, 36 Kan. App. 2d 677, 681, 143 P.3d 87 (2006). Under K.S.A. 2017 Supp. 23-2801, the district court has jurisdiction over the division of the marital property in a divorce until "the extent of the vested interest" is "determined and finalized by the court, pursuant to K.S.A. 2017 Supp. 23-2802." Thus, "although district courts have broad discretion to adjust the property rights of parties to a divorce action, such discretion extends only to actually dividing the property." *In re Marriage of Crane*, 36 Kan. App. 2d at 682-83.

"(a) If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, the agreement shall be incorporated in the decree. . . .

9

"(b) Matters settled by an agreement incorporated in the decree, other than matters pertaining to the legal custody, residency, visitation, parenting time, support or education of the minor children, shall not be subject to subsequent modification by the court except: (1) As prescribed by the agreement; or (2) as subsequently consented to by the parties." K.S.A. 2017 Supp. 23-2712; see K.S.A. 1998 Supp. 60-1610(b)(3).

While Donna correctly argues that *Larimore* does not address whether the district court reserved continuing jurisdiction over the retirement accounts, here the district court's express reservation of continuing jurisdiction did not cause the judgment dividing Dennis' pension to remain nonfinal until the entry of a QDRO.

The property settlement agreement stated, in relevant part: "[Dennis'] General Motors pension benefits shall be divided equally between the parties pursuant to a [QDRO], and the Court shall have continuing jurisdiction to enter and amend such orders [as] may be necessary to effectuate the division of property." The property settlement agreement became effective on the date the second person signed it; both parties signed and dated the agreement May 27, 1998. The divorce decree stated: "[T]he executory provisions thereof not heretofore performed shall be enforced by the Court, which retains jurisdiction of the parties and subject matter therefor" and "the parties' have each accepted the provisions made for them in said Agreement in full settlement and satisfaction of their respective property rights and interests and all marital rights." The district court entered the final divorce decree on May 27, 1998.

Based on the unambiguous language of the divorce decree, the district court reserved continuing jurisdiction in order to enter or amend a QDRO in the future. The district court's jurisdiction over the property division ended when the district court entered the final divorce decree in 1998. The parties did not consent to modification of the settlement agreement under the agreement or in a later agreement. Accordingly, if we find that the district court entered a final judgment in the 1998 divorce decree dividing

10

Dennis' pension, then the dormancy statute applies because the judgment became effective in 1998 and Donna did not execute on the judgment until 2017.

In *Larimore*, the parties divided the couple's pensions with 60% awarded to the owner of the account and 40% to the non-owner spouse. The panel held the judgment "qualifie[d] as a final determination in the marital estate" and the dormancy statute applied. 52 Kan. App. 2d at 42. The district court here divided Dennis' pension equally between the parties, which means the parties intended Donna and Dennis to each receive 50% of the pension. Like in *Larimore*, the judgment dividing Dennis' pension constituted a "final determination of the parties' rights in an action." See K.S.A. 2017 Supp. 60-254(a).

But Donna cites to *Hawkins v. C.I.R.*, 86 F.3d 982 (10th Cir. 1996), to argue that without qualification of a retirement plan—or allowing an ERISA plan administrator to determine if a DRO is a QDRO—a district court's judgment dividing the pension is incomplete and not a final judgment. However, the *Hawkins* court only determined whether the parties' agreement was a QDRO. 86 F.3d at 993-94. The *Hawkins* decision does not support Donna's argument that the entry of a QDRO is required before a district court may enter a final judgment when dividing an ERISA-governed pension.

A similar argument was addressed by another panel of our court in *In re Marriage of Smith*, No. 115,365, 2012 WL 1649835, at *4 (Kan. App. 2012) (unpublished opinion). There, the ex-wife argued *Hawkins* supported her claim that the divorce decree awarding her one-half of her ex-husband's ERISA-governed 401(k) account was not final because the decree said nothing about the entry of a QDRO. The *Smith* panel rejected this argument, explaining:

11

"While *Hawkins* stated that a qualified pension plan may not be alienated without a QDRO, it says nothing about whether an apportionment of a pension plan in a divorce decree is a final judgment without a QDRO. . . .

"We agree that the district court had the obligation to enter a QDRO in order to enforce the judgment had one been timely requested. The problem for Pam, however, is that she waited until the judgment had become dormant to request it. Again, all she needed to do if she desired to enforce the judgment before it became dormant was first to procure from the court an order requiring Jeffrey to cooperate in providing the information about the 401(k) account that was necessary in a QDRO. She then had only to obtain the court's signature on a QDRO that would divide the plan according to the decree and submit it to the administrator of Jeffrey's 401(k) account. *But once the dormancy exceeded the time within which it could be revived, she had nothing to enforce.*" (Emphasis added.) 2012 WL 1649835, at *4-5.

Here, unlike in *Smith*, the decree stated that the division of the pension would occur pursuant to a QDRO. But the agreement still clearly outlined the extent of Dennis' and Donna's rights in the pension and constituted a fixed amount that was "complete and certain in itself," which made the judgment susceptible to enforcement in the manner provided by law, i.e., by the entry of a QDRO. See *Bandel*, 211 Kan. at 677.

Donna points us to two more Kansas cases—*In re Marriage of Lazarus*, No. 106,139, 2012 WL 4794592 (Kan. App. 2012) (unpublished opinion), and *In re Marriage of Lida*, No. 90,411, 2004 WL 719888 (Kan. App. 2004) (unpublished opinion)—to argue that the district court's reservation of continuing jurisdiction should not be ignored and the judgment was not final until the district court entered a QDRO. But these cases do not support Donna's claim.

In *Lazarus*, the final divorce decree incorporated the couple's settlement agreement which awarded the wife a property equalization of about $10,000 with the funds paid from her husband's pensions located in the United Kingdom. Under the

decree, the district court reserved jurisdiction to enter any further orders until the payment was completed. But as Donna admits, *Lazarus* does not address application of the dormancy statute. Donna also incorrectly argues that the wife waited several years to file a motion to enforce judgment as the *Lazarus* decision clearly states the wife filed the motion about one year after the entry of the divorce decree. Finally, while the *Lazarus* decision reviewed a district court's reservation of jurisdiction, the decision did not discuss the effect of the reservation on the finality of the judgment. 2012 WL 4794592, at *3-6. Thus, *Lazarus* does not apply to the facts of this case.

While the factual circumstances in *In re Marriage of Lida* are more on point, we agree with Dennis that the decision actually supports the opposite result of Donna's claim. In *Lida*, the journal entry provided for the valuation of an advertising business and also a property equalization award. Although the district court's 1994 journal entry retained jurisdiction "until the property payment has been determined," the panel held that there was no dormancy issue because the husband's property equalization obligation was not "'complete and certain in itself'" and "did not constitute an enforceable judgment regarding the actual amount owed by [him]." 2004 WL 719888, at *4-5. In other words, because the 1994 journal entry left the husband's property equalization obligation as a nonfinal judgment, with the value undetermined, there was no question of dormancy.

Here, the parties' settlement agreement that was incorporated into the final divorce decree is a final judgment. The decree required the pension to be divided equally. The district court's reservation of jurisdiction did not cause the divorce judgment to remain nonfinal until entry of a QDRO but provided the district court with jurisdiction—after entering a final decree—to enter or amend a QDRO in the future. Because the district court entered a final judgment in the 1998 decree, the dormancy statute applied, and the district court did not err in denying Donna's 2017 motion for entry of a QDRO.

2.    *Should this panel overturn* Larimore*?*

Donna next claims we should overturn *Larimore* because (1) application of state-specific statutes of limitation frustrates congressional intent for uniform application of ERISA and (2) the decision is contrary to public policy according to other out-of-state court decisions, the complexity of filing a QDRO, and the *Larimore* decision's impact on nonworking women involved in divorce proceedings. While we have no power to overturn *Larimore*, "we are not bound by the decision of a previous panel of our court." *State v. Fahnert*, 54 Kan. App. 2d 45, 56, 396 P.3d 723 (2017).

Donna's first point requires us to determine whether ERISA preempts state law. The Kansas Supreme Court has stated:

"Generally, federal preemption of state law occurs only if state law conflicts with or frustrates the federal scheme or Congress sought to occupy the field to the exclusion of the states. There is a reluctance to infer preemption, and there is an assumption that Congress did not intend to displace state law. [Citation omitted.]" *Hartford Accident & Indem. Co. v. American Red Ball Transit Co.*, 262 Kan. 570, 575, 938 P.2d 1281 (1997).

The panel in *Larimore* also addressed the issue of ERISA:

"We begin with a brief discussion of ERISA which . . . 'supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' governed by ERISA. See 29 U.S.C. § 1001 (2012); 29 U.S.C. § 1144(a) (2012). . . .

. . . .

"ERISA prohibits the assignment or alienation of pension benefits, and this prohibition includes domestic relations orders (DROs) which attempt to create, assign, or recognize spousal property rights in an employee spouse's pension. 29 U.S.C. § 1056(d) (2012). For ERISA purposes, a DRO includes any judgment, decree, or order which was

14

entered pursuant to state domestic relations law and 'relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant.' 29 U.S.C. § 1056(d)(3)(B)(ii) (2012).

"QDROs . . . are 'an exception not only to ERISA's rule against assignment of plan benefits but also to ERISA's broad preemption of state law.' *Trustees of Directors Guild of America v. Tise*, 234 F.3d 415, 420 (9th Cir. 2000) (citing 29 U.S.C. § 1144[b][7]). A QDRO is a DRO which 'creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan.' 29 U.S.C. § 1056(d)(3)(B)(i) (2012). 'A valid QDRO must meet the comprehensive requirements of at least three federal acts, as amended: the Internal Revenue Code, [ERISA], and the Retirement Equity Act of 1984.' *In re Marriage of Cray*, 254 Kan. 376, 390, 867 P.2d 291 (1994)." 52 Kan. App. 2d at 36-37.

Moreover, the panel recognized that

"[a] former spouse's right to receive pension benefits deemed marital property, however, does not arise under ERISA. That right or interest is based on a state court judgment ordered under state domestic relations law. Indeed, a 'QDRO only renders enforceable an already-existing interest.' *Tise*, 234 F.3d at 421. "'[T]he QDRO provisions of ERISA do not suggest that [the alternate payee] has no interest in the plan [ ] until she obtains a QDRO, they merely prevent her from enforcing that interest until the QDRO is obtained." [Citations omitted.]' 234 F.3d at 421. As a result, in this case, while federal law did not provide a statute of limitation for the filing of a QDRO, *Janice could only obtain a QDRO if she had a valid right or interest created under Kansas domestic relations law to enforce*." (Emphasis added.) 52 Kan. App. 2d at 39.

Thus, ERISA recognizes a QDRO as an exception to the preemption of state laws and antialienation of ERISA-governed retirement benefits. Accordingly, in reviewing ERISA, application of state law to QDROs does not frustrate congressional intent. The *Larimore* panel did not err.

Next, Donna cites to several out-of-state court decisions to argue that applying statutes of limitations to bar late filings of a QDRO results in windfall and unjust enrichment to the spouse-owner of the retirement account. But out of the five jurisdictions Donna cites—Missouri, Tennessee, New York, Utah, and Michigan—only *Duhamel v. Duhamel* (*Duhamel II*), 194 Misc. 2d 100, 101-02, 753 N.Y.S.2d 673 (2002), opined inequities—such as unjust enrichment and windfall—may result from application of statute of limitations to bar a motion to compel the late entry of a QDRO.

Donna principally asks us to consider how other courts have viewed the application of statutes of limitations to a party's late filing of a QDRO. Admittedly, these courts base their decisions on different grounds than *Larimore*. But while we find them persuasive, the decisions are distinguishable overall.

As Dennis argues, Donna's reliance on the Missouri Supreme Court's decision in *Ochoa v. Ochoa*, 71 S.W.3d 593 (Mo. 2002), is misplaced based on the facts and the application of a Missouri-specific law. There, the wife first mailed the ERISA plan administrator a copy of the divorce judgment that divided the retirement plan one year after the divorce, but the plan administrator declined to recognize the order. The Missouri Supreme Court found that the general 10-year limitations period for judgments did not bar the wife's second QDRO—drafted in 1999 or 2000—because the Missouri General Assembly had enacted Mo. Rev. Stat. § 452.330.5 (2000):

> "The court's order as it affects distribution of marital property shall be a final order not subject to modification; provided, however, that orders intended to be [QDROs] affecting pension, profit sharing and stock bonus plans pursuant to the U.S. Internal Revenue Code shall be modifiable only for the purpose of establishing or maintaining the order as a [QDRO] or to revise or conform its terms so as to effectuate the expressed intent of the order."

16

The Missouri Supreme Court also held the general 10-year limitations period did not apply because the more specific law provided no time limit for a party to establish or modify a QDRO. See 71 S.W.3d at 596-97. The Kansas Legislature has not enacted a similar law.

The New York, Tennessee, Utah, and Michigan courts all reached different results than the decision in *Larimore* as well. Highly summarized, these decisions primarily rest on two grounds.

First, the New York, Utah, and Tennessee courts declared that a party's interest in a retirement account awarded in a divorce judgment does not accrue, for statute of limitations purposes, until the retirement benefits are payable. *Johnson v. Johnson*, 330 P.3d 704, 710-11 (Utah 2014); *Jordan v. Jordan*, 147 S.W.3d 255, 261-62 (Tenn. App. 2004) (agreeing with New York but case decided on other grounds since benefits not yet payable); *Duhamel v. Duhamel* (*Duhamel I*), 188 Misc. 2d 754, 755-56, 729 N.Y.S.2d 601 (2001). In other words, the jurisdictions provide—once the benefits become payable—that the statute of limitations for enforcing the judgment applies to each individual or discrete payment. See, e.g., *Johnson*, 330 P.3d at 710-11.

These courts applied the statute of limitations to retirement or pension judgments awarded in a divorce decree similar to how Kansas courts apply the dormancy statute to installment payments. In other words, the dormancy period would not start to run until each retirement benefit payment became payable and due. See, e.g., *Riney v. Riney*, 205 Kan. 671, 674-75, 473 P.2d 77 (1970); *Gardner v. Gardner*, 22 Kan. App. 2d 314, 315, 916 P.2d 43, *rev. denied* 260 Kan. 992 (1996); *Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership*, 13 Kan. App. 2d 678, 683-84, 779 P.2d 442, *rev. denied* 245 Kan. 788 (1989). Here, the parties' settlement agreement did not specify how Donna would receive the payments but awarded her an equal interest in Dennis' pension. At the

17

time of the divorce, Dennis' pension was not yet payable, and he did not decide to take early retirement until 2016.

Second, in the Tennessee and Michigan decisions, the retirement benefits had not yet become payable but the appellate courts held the limitations period on judgments did not bar the parties' motion for entry of a QDRO, holding a request to enter a QDRO is not an act to enforce the judgment. See *Jordan*, 147 S.W.3d at 262-63 (holding ERISA plan administrator approval of divorce judgment as a QDRO adjunct to entry of judgment, not enforcement; thus, until QDRO approved, divorce judgment inchoate or incomplete); see also *Joughin v. Joughin*, 320 Mich. App. 380, 385-87, 906 N.W.2d 829 (2017) (following *Jordan*, "entry of the proposed QDRO is not an action to enforce a noncontractual money obligation" under Mich. Comp. Laws § 600.5809 so not barred by 10-year limitations period on judgments).

Notably, the Michigan and Tennessee appellate courts address the finality of a judgment dividing an ERISA-governed pension differently than the *Larimore* panel. The Michigan and Tennessee courts look at the "ministerial" task of having an ERISA plan administrator approve a QDRO as a necessary step to the enforcement of the judgment which, until accomplished, renders the original divorce judgment inchoate or incomplete. In other words, these courts view an ERISA plan administrator's approval of a QDRO as precluding the finality of the DRO dividing the ERISA-governed pension entered under state domestic relations law. *Jordan*, 147 S.W.3d at 263; see *Joughin*, 320 Mich. App. 2d at 385-89. Notably, the dissenting judge in *Joughin* agreed with the reasoning in *Larimore*. See 320 Mich. App. 2d at 398-401 (Jansen, J., dissenting).

In contrast, the *Larimore* panel—while recognizing that the entry of a QDRO is a ministerial task—held that when a divorce judgment dividing an ERISA-governed retirement plan or pension qualifies as a final determination, a party may not compel the entry of a QDRO after the judgment has been extinguished, meaning the party must

18

execute on the judgment dividing the pension by the entry of a QDRO before that judgment becomes extinguished by the state dormancy law. See 52 Kan. App. 2d at 32, 38-41; K.S.A. 2017 Supp. 60-2403.

While the out-of-state decisions may provide persuasive authority, the reasoning in *Larimore* follows the plain language of K.S.A. 2017 Supp. 60-2403 and K.S.A. 2017 Supp. 60-254(a). As the panel in *Larimore* recognized, a party's interest in an ERISA-governed pension awarded in a divorce decree is created under state domestic relations law, not federal law, and the party "could only obtain a QDRO if she had a valid right or interest created under Kansas domestic relations law to enforce." 52 Kan. App. 2d at 39.

The finality of a judgment does not depend on completing ministerial tasks—like the filing of a QDRO—but depends on whether the court entered a judgment that is

"complete and certain in itself, and that the form of the judgment should be such as to indicate with reasonable clearness the decision which the court has rendered, so that the parties may be able to ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement in the manner provided by law. [Citations omitted.]" *Bandel*, 211 Kan. at 677.

Accordingly, a party's failure to timely enter a QDRO on a divorce judgment dividing an ERISA-governed pension does not render a judgment nonfinal under Kansas law.

Donna next argues *Larimore* overlooks public policy considerations, such as how the entry of a QDRO involves a complex process and negatively impacts the interests of nonworking women in divorce proceedings.

Our Supreme Court has explained, however, that "[r]elying on the plain language selected by the legislature is the best and only safe rule for determining legislative intent, and such plain language takes priority over both judicial decisions and policies advocated

19

by the parties." *State v. Great Plains of Kiowa County, Inc.*, 308 Kan. 950, 957, 425 P.3d 290 (2018). Unless there is an ambiguity in the statutory language, "we leave policy determinations to the legislature. Appellate courts do 'not decide nor weigh the beneficial results flowing from any particular legislative policy.'" *Whaley v. Sharp*, 301 Kan. 192, 199, 343 P.3d 63 (2014). Because we find the language in K.S.A. 2017 Supp. 60-2403 and K.S.A. 2017 Supp. 60-254 unambiguous, we find the *Larimore* panel correctly held the dormancy statute applies to a final determination of the parties' rights in a division of an ERISA-governed pension. The failure to timely enter a QDRO does not render the judgment nonfinal.

3.      *Is* Larimore *factually distinguishable from this case?*

Donna next argues this case is distinguishable because (1) in *Larimore*, the judgment divided both the wife's and husband's retirement accounts; and (2) she was misled into not filing a QDRO to protect her interest in Dennis' pension.

First, the fact that this case only concerns Dennis' retirement account does not distinguish it from *Larimore*. Second, Donna's next argument—that Sickel's letter in 1998 agreeing to file a QDRO and Dennis' agreement in 2013 to sign the paperwork so Donna's attorney could file a QDRO misled her into not timely filing a QDRO—appears to be based on equitable or promissory estoppel grounds.

At the outset, however, we question whether Donna may claim an equitable doctrine applies to avoid application of K.S.A. 2017 Supp. 60-2403.

Kansas courts have held that application of the dormancy and revivor statutes demand strict compliance. See *Associated Wholesale Grocers, Inc.*, 293 Kan. at 646. The dormancy statute operates to render a judgment unenforceable and extinguished if the party does not timely execute, file a renewal affidavit, and/or revive the judgment as

20

required under K.S.A. 2017 Supp. 60-2403. See, e.g., *Cyr*, 249 Kan. at 97; *Larimore*, 52 Kan. App. 2d at 44. "The statutes relating to dormancy, revivor, and extinguishment of judgments are not like ordinary statutes of limitation. Once a judgment is extinguished there is nothing on which equitable doctrines such as estoppel may operate." *Clark v. Glazer*, 4 Kan. App. 2d 658, Syl. ¶ 2, 609 P.2d 1177 (1980). In light of the interpretation given to K.S.A. 60-2403, it appears Donna cannot invoke equitable doctrines to avoid the harsh result of the dormancy and revivor statutes.

Nevertheless, one panel of this court has held that

"K.S.A. 60-2404 specifically states that 'the court shall enter an order of revivor unless good cause to the contrary be shown.' The statute does not specifically define what is meant by 'good cause.' We find that equitable principles such as laches guide the court in its determination of what good cause entails. Thus, we find the legislature did not abrogate equitable remedies in enacting the dormancy and revivor statutes." *In re Marriage of Jones*, 22 Kan. App. 2d 753, 756, 921 P.2d 839, *rev. denied* 260 Kan. 993 (1996).

Notably, *Jones* may not provide much support for applying equitable doctrines to avoid operation of the dormancy and revivor statutes based on its unique factual circumstances. In *Jones*, the husband and wife entered into an agreement with each other to increase the child support payments from $1,200 to $1,800 in order to defraud a bank. Over the years, the husband paid the lower amount of $1,200. About 12 years later, the wife sought to revive the judgment for the unpaid $600 per month. The panel held that the doctrines of laches and unclean hands barred her claim to any child support arrearage on their child who had reached the age of majority. 22 Kan. App. 2d at 761. Based on the differences between these cases, we find *Jones* inapplicable.

"Promissory estoppel is an equitable doctrine designed to promote some measure of basic fairness when one party makes a representation or promise in a manner

21

reasonably inducing another party to undertake some obligation or to incur some detriment as a result. . . . [P]romissory estoppel [applies] when: (1) a promisor reasonably expects a promisee to act in reliance on a promise; (2) the promisee, in turn, reasonably so acts; and (3) a court's refusal to enforce the promise would countenance a substantial injustice. . . . Because promissory estoppel rests on fairness, its application tends to be especially fact driven and, thus, defies any regimented predictive test. [Citations omitted.]." *Bouton v. Byers*, 50 Kan. App. 2d, 34, 41, 321 P.3d 780 (2014), *rev. denied* 301 Kan. 1045 (2015).

"'Equitable estoppel is the effect of the voluntary conduct of a person whereby he [or she] is precluded, both at law and in equity, from asserting rights against another person relying on such conduct.' [Citation omitted.]" *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 769, 388 P.3d 84 (2017). "The party asserting equitable estoppel must show that (1) another party induced reliance on certain facts, (2) the party asserting estoppel reasonably relied upon those facts, and (3) that party was prejudiced by its reliance." *Becker v. The Bar Plan Mut. Ins. Co.*, 308 Kan. 1307, 1316, 429 P.3d 212 (2018). However, "[t]he party asserting equitable estoppel will not prevail 'where facts are ambiguous or subject to more than one construction.' Needless to say, equitable estoppel cannot exist if any essential element is missing or is not satisfactorily proved. [Citations omitted.]" *Steckline Communications, Inc.*, 305 Kan. at 770.

The two doctrines differ—in part—because equitable estoppel contains an element of misrepresentation, whereas, promissory estoppel does not. See *Bouton*, 50 Kan. App. 2d at 51-53, 55. Based on Donna's argument in the district court and on appeal, it appears Donna has raised an equitable estoppel claim, i.e., that Sickel's 1998 letter and Dennis' agreements in 2013 misled her into doing nothing to protect her interest through a timely filed QDRO or a timely motion to compel entry of a QDRO.

22

At the hearing in August 2017, the district court acknowledged that Donna's divorce attorney, Simon, sent a letter to Sickel in June 1998 that disclosed an agreement for Sickel to prepare the QDRO. The district court recognized that Donna had to rely on attorneys and others to understand the law but held her reliance was not legally sufficient to support a finding that Donna was misled into doing nothing. The district court further denied Donna's claim based on Dennis' 2013 agreement because, at that time, the divorce judgment had been extinguished. See K.S.A. 2017 Supp. 60-2403.

In other words, the district court held that Donna's reliance on the promises were not reasonable. As determined by the district court, Donna failed for 19 years to enter a QDRO on the divorce judgment dividing the pension. Donna was represented by counsel at the time of the divorce, and her divorce attorney alerted her in 2013 to Sickel's failure to file a QDRO. Donna did not seek enforcement of the QDRO through the district court in 2013 but approached Dennis first. In addition, the letter to Sickel did not provide much proof that Sickel received or agreed to the contents of the 1998 letter. Under the circumstances, we agree with the district court that Donna's reliance was not reasonable and the district court did not err in denying the claim. Under a strict compliance approach, we hold that the district court's denial of Donna's estoppel claim was right for the wrong reasons. See *Bouton*, 50 Kan. App. 2d at, 49 ("A district court may be affirmed if it reaches the right result for the wrong reason.").

4.      In re Marriage of Strom *inapplicable*

At oral argument, Donna asked us to apply the recently decided case of *In re Marriage of Strom*, 56 Kan. App. 2d 656. In *Strom*, the parties were divorced in 1995 after 9 years of marriage. As part of the parties' property settlement agreement, the wife was awarded 50 percent of her husband's military retirement pay for a period of 10 years and then 20 percent thereafter until either the wife or husband died, whichever came first. At the time of the divorce, the husband was receiving his military retirement pay.

23

However, the wife did not seek to enforce her right to such payments until 2017, even after the husband's consistent nonpayment since the divorce. The majority of the *Strom* panel held that with respect to military retirement pay, each monthly payment represented a separate judgment, and those judgments falling within the execution and dormancy period could be revived and enforced. 2019 WL 166571, at *4. The dissent argued that the divorce decree from 1995, which divided the husband's military retirement, constituted a final judgment which had to be executed upon within the enforcement and dormancy period, and, because it was not, the wife's judgment for a portion of the husband's military retirement could not be enforced. 2019 WL 166571, at *5-9 (Buser, J., dissenting).

Donna argues we should apply *Strom* because she claims Dennis' pension is payable in monthly installments, meaning those monthly payments falling within the execution and dormancy periods can be revived and allow her to receive a portion of such payments. We see a number of problems with her argument.

Our consideration of this argument is complicated by the fact that Donna did not make this argument below or in her briefs. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (issues not adequately briefed deemed waived or abandoned); *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011) (issues not raised before district court cannot be raised on appeal). Nor did she submit a letter of supplementary authority. See Supreme Court Rule 6.09(a)(1) (2019 Kan. S. Ct. R. 39) (party may advise court, by letter, of persuasive authority that came to party's attention less than 14 days before argument).

But even considering the merits of her argument, we find *Strom* inapplicable for two reasons. First, *Strom* deals with military retirement pay, which is arguably different than the General Motors pension at issue here. At oral argument, Donna's counsel argued that Dennis' pension was payable only in installments like military retirement pay, but the

24

record does not support such an assertion. Also distinguishing is the fact that the military retirement pay at issue in *Strom* could not be divided by a QDRO because the parties had not been married long enough. Second, and perhaps more importantly, Donna sought a lump sum division of Dennis' pension and she did not obtain a judgment for monthly payments.

E.    *Conclusion*

Under the reasoning in *Larimore*, the district court properly held that K.S.A. 2017 Supp. 60-2403 applied to the 1998 judgment and that judgment had been extinguished before Donna filed a motion for entry of a QDRO in 2017. The district court entered the divorce decree in 1998, and the decree divided Dennis' pension equally between Donna and Dennis, but Donna took no action to execute on the judgment dividing Dennis' ERISA-governed pension until May 2017. We conclude the district court did not err in denying Donna's motion because her 19-year delay in executing on the judgment— through the entry of a QDRO—left her with no judgment to enforce by operation of the dormancy statute.

Affirmed.