Schroeder, J.:
*585 *655 As part of his 1995 property settlement agreement approved by the district court, Eric G. Strom agreed to pay *656 his former wife, Christina A. Strom, a portion of his military retirement pay until one of them dies. For reasons not reflected in the record, no payments have been made to Christina for over 22 years. The district court determined the agreement to pay part of Eric's military retirement pay each month created a monthly judgment as each month passed. In doing so, it found the judgments for the last five years enforceable and for years six and seven revived. Eric appeals. We agree with the district court on this point and affirm.
FACTS
Eric and Christina Strom married in 1986 and divorced in 1995. At the time of the divorce, Eric had retired from the military and was receiving military retirement benefits. In the Separation and Property Settlement Agreement (Agreement), Eric agreed to give Christina a portion of his military retirement benefits:
"2.10 Military Retirement Pay. The HUSBAND agrees that during this marriage the WIFE has earned an independent property right to a portion of his military retirement. The HUSBAND agrees that the WIFE should be entitled to receive as her share fifty percent (50%) or Seven Hundred Forty-Three and No/100 Dollars ($743.00) of his military retirement pay, which he is presently receiving, commencing on the first day of the month following the finalization of this divorce for a period of ten (10) years. After July 1, 2005, the WIFE shall be entitled to receive twenty percent (20%) of HUSBAND's military retirement pay.
"The WIFE shall receive by direct payment from the military finance center the amount set forth above less Federal and State Income tax withholding deductions. The HUSBAND agrees to provide any information or documentation the WIFE may need to complete her request for direct payment of disposable military retirement pay from the Military Finance Center.
"Payments to the WIFE shall terminate upon the death of the WIFE or HUSBAND, whichever occurs first.
"Each party shall be responsible for their own taxes due to their income from the military retirement."
The district court approved the Agreement and incorporated it as part of the divorce decree. Eric never made any payments under the Agreement.
Almost 22 years later, in 2017, Eric moved to declare the division of his military retirement account to be void and an unenforceable judgment. He asserted the judgment was dormant because Christina failed to file a renewal affidavit within five years of the *657 divorce and did not revive the judgment within seven years of the divorce. Eric also asserted the judgment should be barred by laches because Christina waited more than 21 years to attempt to enforce the judgment. Christina then moved to enforce the judgment and to revive the judgment.
The district court initially denied Christina's motion to enforce the judgment finding the division of retirement benefits was a dormant judgment because Christina had the ability to enforce her judgment by filing a qualified domestic relations order (QDRO). The order did not address Eric's laches argument.
Christina moved for reconsideration, pointing out she was not eligible to receive direct payment of Eric's military retirement under federal statute because they were not married for 10 years. She argued the judgment required installment payments and, as a result, each payment expired seven years after it became due instead of the entire judgment expiring in 2002. The district court agreed with Christina's argument and held all payments after September 1, 2010, were revived and enforceable. The district court did not address whether laches applied.
The judgment is subject to reviver.
Eric argues the district court erred when it granted Christina's motion to enforce the judgment because the judgment was dormant. Since K.S.A. 2017 Supp. 60-2403 governs dormancy of judgments, this court has *586 unlimited review. See Neighbor v. Westar Energy, Inc. , 301 Kan. 916, 918, 349 P.3d 469 (2015) (holding interpretation of a statute is a question of law over which appellate courts have unlimited review).
The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. State ex rel. Schmidt v. City of Wichita , 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in *658 its words. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. Ullery v. Othick , 304 Kan. 405, 409, 372 P.3d 1135 (2016).
K.S.A. 2017 Supp. 60-2403 states:
"(a)(1) Except as provided in subsection (b), if a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. When a judgment becomes and remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so.
(2) A 'renewal affidavit' is a statement under oath, signed by the judgment creditor or the judgment creditor's attorney, filed in the proceedings in which the judgment was entered and stating the remaining balance due and unpaid on the judgment.
....
"(c) The time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited."
K.S.A. 2017 Supp. 60-2403(a) applies to judgments in divorce actions. See Bank IV Wichita v. Plein , 250 Kan. 701, Syl. ¶ 3, 830 P.2d 29 (1992) ; see also In re Marriage of Larimore , 52 Kan. App. 2d 31, 42, 362 P.3d 843 (2015) (holding division of a party's retirement account in a divorce decree is a judgment subject to K.S.A. 2014 Supp. 60-2403 when the division is a final determination of the parties' interests in the marital estate).
In Larimore , the panel held K.S.A. 2014 Supp. 60-2403(c) does not toll the running of the dormancy period for a divorce decree judgment dividing retirement plans governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 (2012) et seq. The panel concluded the judgment was not stayed because the legal process for enforcing the judgment-filing a QDRO-was not *659 stayed or prohibited before the benefits become payable. Since the legal process for enforcing the judgment was available to the wife, and she failed to file a QDRO or renewal affidavit within seven years of the divorce decree, the panel held the judgment was "absolutely extinguished and unenforceable." 52 Kan. App. 2d at 44, 362 P.3d 843.
Eric argues Larimore should control. He contends Christina cannot rely on K.S.A. 2017 Supp. 60-2403(c) because "no court order, statutory tolling period or other legal impairment" prevented her from collecting her share of his retirement account starting in 1995. He asserts the fact that some payments were not yet due did not prevent her *587 from executing in other ways or filing a renewal affidavit.
Christina contends receiving direct payment from the military finance center was impossible because the parties had not been married for at least 10 years. She contends Larimore and its line of cases are distinguishable because the Department of Defense will not pay her directly and the only way for her to receive her share of the military retirement is for Eric to pay her. Thus, she asserts, the divorce decree set out monthly installment payments payable over an indefinite number of months and years.
Christina argues the divorce decree did not determine the specific amount Eric was to pay her and, since the payments terminated upon the death of either party, there was no way to establish the total amount of the payments. She contends the district court "obviously retained jurisdiction to ... enforce the parties' agreement to calculate amount paid and owed, to determine what amount constituted 20% in accordance with the Agreement, and to order termination of the payments upon death of either party." As a result, Christina asks this court to apply the holding of Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership , 13 Kan. App. 2d 678, 684, 779 P.2d 442 (1989) :
"[T]he same rules that apply to alimony or child support installments also apply to a judgment for a division of property which is payable in installments commencing in the future and payable over a term of years.
....
"... As to the judgment payable in installments, the dormancy period commenced as to each installment when it became due and was collectable by execution or other legal process."
*660 Eric argues Wichita Federal should not be expanded to apply to division of retirement assets.
We find Christina's argument more persuasive. This case is distinguishable from Larimore . In Larimore , had the wife filed a QDRO, she would have begun receiving under the retirement plan when it began to pay out. In contrast, even if Christina had filed a QDRO, it would have been futile. Under 10 U.S.C. § 1408(d)(2) (2012), to receive a portion of a spouse's military retirement pay directly, the parties must have been married for a period of at least 10 years during which one of the parties was in the military. Christina and Eric were only married for nine years. As a result, even if Christina had filed a QDRO, the Department of Defense would not have honored her QDRO. The only way for Christina to receive the military retirement pay awarded her in the Agreement was for Eric to pay it directly, something he failed to do.
The military retirement pay Eric agreed to pay Christina was a percentage of his monthly payment from the Department of Defense and thus a monthly installment payment Eric should pay each and every month as it becomes due. The Agreement states Christina was entitled to her portion "commencing on the first day of the month following the finalization of this divorce." The Agreement does not specify a total amount Eric must pay Christina; it does not establish a lump sum distribution at some point in the future and talks about the percentage owed on the first of each month. The Agreement acknowledges the monthly military retirement payments terminate only upon the death of either party. Because each payment was not due until the first of the month-and only if both parties were still living-Christina could not act to enforce the judgment before the first of each month as it became due. We find the monthly military retirement payments should be treated like installment payments and, under Wichita Federal , the dormancy period for each individual payment started when it became due and collectable on the first of each month until the death of either party. The district court did not err when it found the divorce decree "provided for monthly payments, which became monthly judgments," now subject to execution upon for the last five years and revived for years six and seven.
*661 Affirmed.