NOT DESIGNATED FOR PUBLICATION

No. 127,613

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
BARBARA JEAN BATES,
*Appellee*,

and

DAVID ALAN BATES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Oral argument held November 19, 2025. Opinion filed January 16, 2026. Affirmed.

*Richard W. Martin, Jr.*, of Martin & Wallentine, LLC, of Olathe, for appellant.

*Stacey S. Stranathan*, of Stranathan Law, LLC, of Leawood, for appellee.

Before ARNOLD-BURGER, P.J., MALONE and BOLTON FLEMING, JJ.

PER CURIAM: Barbara Jean Bates and David Alan Bates divorced in 1995. This appeal arises from a dispute over the payment of military retirement benefits under a settlement agreement in their divorce. The parties agreed Barbara would receive a portion of David's military retirement benefits once he retired. Prior to David's retirement, the parties discovered that due to a military rule, Barbara would not be able to receive the retirement benefits directly from the military. The parties discussed David making direct payments to Barbara instead.

1

David retired on August 1, 2008, and began receiving retirement benefits on September 1, 2008. But Barbara did not start receiving any benefits at that time.

In 2017, Barbara reminded David of his obligation to make the retirement payments, and David began making direct monthly payments to Barbara in January 2018. He ceased making payments in June 2022. In March 2023, David filed a motion to terminate his obligations, arguing the original judgment was dormant under K.S.A. 2022 Supp. 60-2403. The district court ruled in favor of Barbara, treating the payments David owed each month as installments, and finding that each installment could only become a dormant and non-revivable judgment under K.S.A. 2022 Supp. 60-2403 seven years after the installment came due. Because Barbara was only seeking relief for payments that came due after June 2022, the district court ruled that those payments were not dormant or extinguished. The district court also awarded Barbara attorney fees.

On appeal, David raises two issues. First, he argues that the district court erred in its interpretation of K.S.A. 2022 Supp. 60-2403 and Kansas caselaw to find he owes additional payments to Barbara. Second, David states the district court erred by awarding Barbara attorney fees. After a thorough review of the record, we find no error. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

David Alan Bates and Barbara Jean Bates (now Saunders) were married in 1973 and divorced in 1995. A divorce decree and a separation and property settlement agreement were filed on April 13, 1995. As part of that agreement, David agreed to pay Barbara a portion of his military retirement benefits using an agreed upon formula. The property settlement agreement acknowledged that David had "not performed at least ten (10) years of creditable military service during the parties' marriage," but anticipated he would continue on active service duty for at least 10 years. It further provided the parties

would execute a Qualifying Court Order (QCO) and submit it to the Johnson County District Court. The parties filed the QCO on July 26, 2000. The QCO provided additional instructions on the manner of payments to Barbara.

Nothing happened regarding the military retirement benefits until 2008. Barbara claimed that in January 2008, David told her he had retired but would not draw a pension until "later." He informed her of the military "10/10 rule" and told her he would pay her directly when he started drawing his pension but did not yet know what that amount or date would be. The parties both believed that application of the military "10/10 rule" meant that Barbara would not be eligible to receive military benefit payments directly from the Defense Finance and Accounting Service (DFAS) because David had not performed creditable military service for at least 10 years during their marriage.

David retired on August 1, 2008, and began receiving military retirement payments on September 1, 2008. But David did not begin paying benefits to Barbara until January 1, 2018. Because Barbara was not eligible to receive the military benefit payments directly, David made payments directly to Barbara in lieu of those payments. David continued making direct payments to Barbara until June 2022.

In March 2023, David filed a pro se motion titled "Motion to Declare that the Provision in Separation and Property Settlement Agreement Incorporated into Final Decree Regarding the Respondent's Military Retirement Does Not Provide for Direct Payments and Any Attempt to Modify Decree is Time Barred." Later that month and with the assistance of counsel, David filed a "Motion to Release Judgment of Record." The district court granted that motion on May 8, 2023.

On May 22, 2023, Barbara filed a "Motion to Set Aside Judgment and Motion for Attorney's Fees." In addition to arguing the merits of David's motion, Barbara alleged that David misled the district court by telling the court an important, controlling case was

an unpublished decision. She argued that David should be sanctioned through an order to pay attorney fees at $250 per hour.

On September 20, 2023, the district court entered an "Order Setting Aside Judgment." In that order, the district court held:

"The Court agrees that respondent both recognized and began making some payments long after they were due but then decided he no longer had an obligation to make such payments. To the extent petitioner failed to execute on each of the monthly payments within seven years of their becoming due in August of 2008, all such payments are dormant. But the relief sought here is to enforce those monthly payments that subsequently became due after respondent ceased making payments. And those judgments, as described by *Shrum*, are not dormant.

"From the time respondent stopped sharing the agreed military benefits with petitioner, there was little question what was owed and when.

"Accordingly, and for the foregoing reasons, the Court grants petitioner's motion to set aside its judgment to the extent it released the entire judgment on dormancy grounds. The Court also orders respondent to pay petitioner's attorney fees for all related briefing and oral arguments at the hourly rate of $250 per hour."

David then filed a "Motion to Alter or Amend Judgment," which was denied on March 6, 2024. David timely appeals.

4

*Did the District Court Err in its Enforcement of the Settlement Agreement?*

*Standard of Review*

Here, we review the interpretation of a settlement agreement between the parties, as well as Kansas statutes pertaining to final judgments and dormancy. An appellate court has "unlimited review over matters of jurisdiction, the interpretation of statutes, and the interpretation of written instruments." *Water Dist. No. 1 of Johnson Co. v. Prairie Center Dev.*, 304 Kan. 603, 606, 375 P.3d 304 (2016).

*Discussion*

David and Barbara were divorced at a time when David continued to serve in the military. As part of their separation and property settlement agreement, Barbara was granted an interest in David's military retirement benefits that had not yet been determined. Section 3.1(e) of the settlement agreement states:

> "The Husband is currently employed as a pharmacist with the United States Department of Health and Human Services–Public Health Service on active reserve duty since August 1, 1993. Husband has also previously served in the United States Air Force on active duty from January 11, 1972 through February 24, 1979, when Husband was honorably discharged from such service. The Husband has accumulated total active duty service for purposes of calculations under the Uniformed Services Former Spouse's Protection Act (Public Law 97-252) during the marriage of the parties for a total of seven (7) years, seven (7) months and fifteen (15) days (through and including April 1, 1995).

> "The Husband has not performed at least ten (10) years of creditable military service during the term of the parties' marriage. It is anticipated by the Husband that he will continue on active service duty with the Public Health

Service for a period of time by which he will accumulate more than ten (10) years of creditable military service following the divorce of the parties. The parties therefore agree that the Wife shall retain a contingent interest in the Husband's military retirement benefits (contingent on the Husband obtaining a total of at least ten (10) years of creditable military service and contingent on the Husband receiving a military retirement benefit) to the extent of receiving a proportionate share of such retirement benefits earned by the Husband during the term of the parties' marriage and to be calculated in the following manner:

"The Wife's entitlement to share in such retirement benefits shall be calculated as a percentage of the Husband's ("Member") retirement benefits as a fraction in which the numerator shall be 3.755 and the denominator shall be the total years of the Husband/Member's creditable military service until his discharge or retirement from said military service.

"The parties agree that such allocation shall be carried forth pursuant to the terms of a stipulated Qualifying Court Order as is provided under the Uniformed Services Former Spouse's Protection Act. The form for the Qualifying Court Order contemplated under the terms of this Agreement shall be prepared by parties' counsel in a manner which is in accordance with the provisions of the Uniformed Services Former Spouse's Protection Act as set forth above and shall be submitted to the Johnson County, Kansas District Court. Each of the parties agree to take whatever steps may be necessary in order to implement the terms of this paragraph, and effectuate a transfer of the above-described retirement benefits to the benefit of the Wife. Each party shall provide any necessary documents or information within their control in order to expedite preparation of a Qualifying Court Order in proper form. The parties further agree, that if necessary to accomplish their objectives as set forth above, the Order contemplated within this Agreement may be amended by the Court to revise or confirm its terms to meet any applicable requirements."

Paragraph 5 of the QCO controls the calculation of the amount due to Barbara:

"The Former Spouse shall receive the following amount from each payment of the Member's disposable retired pay:

"The Former Spouse shall receive a percentage of the Member's disposable retired pay, to be calculated as a fraction in which the numerator shall be 3.775 and the denominator shall be the total years of the Husband/Member's creditable military service until his discharge or retirement from said military service.

"Further, the parties acknowledge that the Former Spouse shall receive a pro rata portion of any increase in the cost of living allowances paid on the Member's military disposable retired pay. The Former Spouse's pro-rata portion of any such cost of living increase shall be calculated using the same percentage as that used in the calculation of Former Spouse's portion of the Member's disposable retired pay as set forth in the previous paragraph."

Paragraph 6 of the QCO provided the duration of the payments: "The monthly payments under Paragraph 5 shall be paid to the Former Spouse as long as the Member has the right to receive the disposable retired pay and shall cease at the death of either party."

At the time the settlement agreement was executed, David had not served long enough to receive military retirement benefits but both parties anticipated that he would. David continued his military service until retiring on August 1, 2008. He began receiving retirement benefits on September 1, 2008. Barbara alleged the following facts in district court:

"We spoke face to face in January of 2008 when he informed me he had officially retired but would not draw a pension until 'later' (he was not specific as to when). We were both only 56 yrs old at the time and had a few years til retirement. At that time he informed me about the Armed Forces 10/10 rule. We discussed his 'obligation' for my retirement and he agreed he would pay me directly when he started drawing his pension but did not yet know what that amount or date would be. We agreed to address an amount when that time came. And he stated he would keep me informed as to when he started receiving his pension."

David did not immediately begin making payments to Barbara once he retired in August 2008. But he acknowledges that in October 2017, Barbara called him about her own retirement and her desire for him to start paying her from his retirement funds. David told the district court, "She then responded that I owed it regardless and that if I did not pay her then we would be returning to court. I told her that I would begin making payments in January 2018."

David did begin making payments in January 2018 and continued to do so until June of 2022. On March 6, 2023, David filed a pro se motion to declare the judgment requiring him to make the payments unenforceable. David also filed a Motion to Release Judgment of Record on March 21, 2023. He argued that the judgment was dormant and unenforceable under K.S.A. 2022 Supp. 60-2403 relying upon *In re Marriage of Larimore*, 52 Kan. App. 2d 31, 362 P.3d 843 (2015).

The dormancy statute, K.S.A. 2022 Supp. 60-2403, provides in pertinent part:

"(a)(1) Except as provided in subsection (b), if a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. When a judgment becomes and remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so. Undisputed payments made prior to a request for a release of judgment are voluntary and not subject to refund or recoupment.

8

"(2) A 'renewal affidavit' is a statement under oath, signed by the judgment creditor or the judgment creditor's attorney, filed in the proceedings in which the judgment was entered and stating the remaining balance due and unpaid on the judgment.

. . .

"(c) The time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited."

Several Kansas cases assist us in determining whether David continues to owe Barbara the payments he stopped making in July 2022, or whether those payments are dormant and non-revivable under K.S.A. 2022 Supp. 60-2403.

*Strom*

A panel of this court considered nearly identical facts in *In re Marriage of Strom*, 56 Kan. App. 2d 655, 435 P.3d 583 (2019) (Buser, J., dissenting). In *Strom,* the parties entered a property settlement agreement in 1995 that awarded the wife a portion of the husband's military retirement pay until one of them died. The agreement stated that the payments to wife were to be made on the first of each month. No payments were made to the wife for 22 years. In 2017, the husband moved to declare the division of his military retirement benefits void and unenforceable. Husband specifically argued that a judgment was created in 1995 when the divorce decree was filed, and the wife failed to file a renewal affidavit within five years of the divorce and did not revive the action within seven years of the divorce, or by 2002.

The district court initially found the division of retirement benefits was a dormant, non-revivable judgment because the wife had the ability to enforce her judgment by filing a qualified domestic relations order (QDRO) and did not do so by 2002. But the wife filed a motion to reconsider, "pointing out she was not eligible to receive direct payment

9

of Eric's military retirement under federal statute because they were not married for 10 years." 56 Kan. App. 2d at 657. Instead, she argued that "the judgment required installment payments and, as a result, each payment expired seven years after it became due instead of the entire judgment expiring in 2002." 56 Kan. App. 2d at 657. The district court agreed and held "all payments after September 1, 2010, were revived and enforceable." 56 Kan. App. 2d at 657.

On appeal, the panel first pointed out that K.S.A. 2017 Supp. 60-2403(a) applied to any judgments from the divorce action. The panel then considered the applicability of *In re Marriage of Larimore*, 52 Kan. App. 2d at 31. In *Larimore,* the panel held K.S.A. 2014 Supp. 60-2403(c) did not toll the running of the dormancy period for a divorce decree judgment dividing retirement plans governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. The judgment in question awarded monthly payments under an ERISA retirement plan. The *Larimore* panel concluded the judgment for these monthly payments was not stayed because the wife had the ability to enforce the judgment by filing a QDRO before the benefits become payable. Since the wife failed to file a QDRO or renewal affidavit within seven years of the divorce decree, the panel held the judgment was "absolutely extinguished and unenforceable." 52 Kan. App. 2d at 44.

But the *Strom* panel distinguished *Larimore*:

"This case is distinguishable from *Larimore*. In *Larimore*, had the wife filed a QDRO, she would have begun receiving under the retirement plan when it began to pay out. In contrast, even if Christina had filed a QDRO, it would have been futile. Under 10 U.S.C. § 1408(d)(2) (2012), to receive a portion of a spouse's military retirement pay directly, the parties must have been married for a period of at least 10 years during which one of the parties was in the military. Christina and Eric were only married for nine years. As a result, even if Christina had filed a QDRO, the Department of Defense would not have honored her QDRO. The only way for Christina to receive the military retirement pay

10

awarded her in the Agreement was for Eric to pay it directly, something he failed to do." *Strom*, 56 Kan. App. 2d at 660.

Here, the parties actually completed a QCO under the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 et seq. The parties and district court treated the QCO as the equivalent of a QDRO. However, a QCO or QDRO would not have assisted Barbara in collecting the monthly payments from David, because she was prohibited by law from seeking them directly from the military due to the "10/10" rule. Like in *Strom,* Barbara's only avenue for payment under the settlement agreement was to seek direct payments from David.

The *Strom* court went on to consider the nature of the monthly military benefit payments:

> "The Agreement does not specify a total amount Eric must pay Christina; it does not establish a lump sum distribution at some point in the future and talks about the percentage owed on the first of each month. The Agreement acknowledges the monthly military retirement payments terminate only upon the death of either party. Because each payment was not due until the first of the month—and only if both parties were still living—Christina could not act to enforce the judgment before the first of each month as it became due. We find the monthly military retirement payments should be treated like installment payments and, under *Wichita Federal*, the dormancy period for each individual payment started when it became due and collectable on the first of each month until the death of either party." 56 Kan. App. 2d at 660.

Similarly, the military retirement benefits at issue in this case were to be paid monthly. Under *Strom*, the dormancy period started on the day each payment became due. Since Barbara only seeks relief for the payments David failed to make beginning on July 1, 2022, only payments due after that date should be considered. Under K.S.A. 2022 Supp. 60-2403 and *Strom,* the monthly judgments that came due after July 1, 2022, are not yet dormant because five years have not expired.

11

*Holliday and Shafer*

After *Strom* was decided in 2019, the Kansas Supreme Court decided *In re Marriage of Holliday*, 317 Kan. 469, 531 P.3d 1216 (2023), and *In re Marriage of Shafer*, 317 Kan. 481, 531 P.3d 524 (2023). Both opinions were filed on the same day.

In *Holliday*, the parties were divorced in 2009. The former husband moved to extinguish the former wife's interest in his Kansas Public Employees Retirement System (KPERS) account, claiming that her judgment had gone dormant because she did not send a copy of the divorce decree to the retirement plan administrator using a QDRO. At issue was whether the original divorce judgment was a final judgment subject to the dormancy statute, and if so, when the dormancy period commenced.

K.S.A. 2022 Supp. 60-254(a) defines a judgment as "the final determination of the parties' rights in an action." The Kansas Supreme Court determined that under K.S.A. 2022 Supp. 60-254(a), the 2009 divorce decree was the judgment. "It fixes the parties' rights and obligations in Jon's KPERS retirement account by evenly dividing its valuation as of a date certain—the divorce petition's filing date." *Holliday*, 317 Kan. at 472. Further, the decree is "all that is needed for KPERS to treat it as a QDRO to administratively process the account as the court contemplated. We easily conclude from this that the court's division of Jon's KPERS account constitutes a final judgment under K.S.A. 2022 Supp. 60-254(a)." *Holliday*, 317 Kan. at 473.

As to the second issue, the court held:

"•Jon's retirement benefits were not payable until he retires, dies, or withdraws from KPERS. Until then, no legal process exists for Jon to receive his retirement benefits from KPERS, nor is there a legal process for Tamara to extract her share. Both parties are on the same footing.

12

"•A QDRO is a procedural mechanism in this context that simply makes KPERS aware that it is to pay the benefits to the alternate payee directly when they become due to the plan member.

"We hold the dormancy period tolled until Jon's retirements benefits became payable to him from his account. In the language of K.S.A. 2022 Supp. 60-2403(c), no legal process was available for Tamara to enforce her judgment until Jon started receiving benefits." *Holliday*, 317 Kan. at 479-480.

In the present case, David urges us to consider *Holliday* without also considering *Strom.* But the two cases may be easily read together. *Holliday* instructs us that we are to treat the original divorce decree and accompanying settlement agreement as a final judgment under K.S.A. 2022 Supp. 60-254(a). But the dormancy period related to that judgment is tolled until David started receiving benefits—or September 1, 2008. Then, *Strom* establishes that as to military retirement benefits, each monthly payment must be considered an installment, coming due on a monthly basis. So, starting on September 1, 2008, as each monthly payment comes due, the dormancy period found in K.S.A. 2022 Supp. 60-2403(a) begins.

It is *Strom*—not *Holliday*—that tells us the monthly payments owed by David must be treated as individual, monthly installments for purposes of determining dormancy. This is because in *Holliday,* the court was considering a KPERS account with the valuation easily calculated as of a date certain—the divorce petition's filing date. 317 Kan. at 473. A lump sum value could be determined as of the petition filing date. But in the present case, the valuation of the military retirement benefits was uncertain, and was to be calculated and paid sometime in the future. The court in *Holliday* also did not consider its holding in the context of monthly payments. But *Holliday* still controls our decision regarding identifying the final judgment and dormancy tolling.

We also consider the Kansas Supreme Court's ruling in *Shafer*, 317 Kan. at 481. In *Shafer*, the Kansas Supreme Court was faced with another property division of military

13

retirement benefits in a divorce. The parties were divorced in 2007. When the husband retired from the military 15 years later, the wife filed an asset division order with the DFAS office. That office requested more information, specifically how many months the parties were married. The wife asked the district court to clarify the order by adding that information, and the district court declined, reasoning "the original judgment had gone dormant under state law, and that Lisa had waited too long to seek changes." 317 Kan. at 481-482. A panel of our court reversed, finding the division order was not a final order subject to dormancy. 317 Kan. at 482.

The Kansas Supreme Court affirmed the panel's decision, albeit for a different reason. The court held that the divorce decree constituted a final judgment under K.S.A. 60-254(a). 317 Kan. at 485. The court further determined that just as the decree and property settlement constituted a final judgment, the judgment is also "subject to the dormancy statute, K.S.A. 2022 Supp. 60-2403." 317 Kan. at 486. The court discussed its holding in *Holliday* regarding K.S.A. 2022 Supp. 60-2403(c)'s tolling provision but did not decide this issue as the parties had not addressed it below. The court remanded the case back to the district court for further proceedings. 317 Kan. at 486.

*Holliday* and *Shafer* each found that a district court's "'division of a retirement account in a divorce proceeding constitutes a judgment subject to dormancy under K.S.A. 2022 Supp. 60-2403 when the division order qualifies under K.S.A. 60-254(a) as a final determination of the parties' interests in the marital estate.'" *Shafer*, 317 Kan. at 486 (quoting *Holliday*, 317 Kan. 469, Syl. ¶ 1). *Holliday* also determined that the tolling provision of K.S.A. 2022 Supp. 60-2403(c) is applicable in property division of retirement benefits when benefits are not yet payable. 317 Kan. 469, Syl. ¶ 3. The Kansas Supreme Court did not mention *Strom* in either opinion.

14

We find that here, the parties executed a settlement agreement that called for monthly payments of military retirement benefits, and those payments could not begin until David retired in 2008. Under *Strom*, each of the payments owed by David to Barbara under the settlement agreement is an installment payment.

Then, under *Holliday,* while the original divorce decree and settlement agreement was a judgment pursuant to K.S.A. 2022 Supp. 60-254(a), that judgment is subject to the dormancy statute, K.S.A. 2022 Supp. 60-2403. However, we hold the dormancy period was initially tolled until David's retirement benefits became payable to him on September 1, 2008. See *Holliday*, 317 Kan. at 479-480. They remain tolled as to each installment payment until such time each installment becomes due. This is consistent with the panel's holding in *Strom*: "[T]he dormancy period for each individual payment started when it became due and collectable on the first of each month until the death of either party." 56 Kan. App. 2d at 660.

David began receiving his monthly, military retirement benefits payments on September 1, 2008. As each monthly payment came due after that date, a new dormancy period was created specific to that payment. Since Barbara is only seeking payments that became due after David made his last payment in June 2022, under K.S.A. 2022 Supp. 60-2403(a)(1), the specific installments Barbara seeks to collect have not been extinguished and are owed. The district court did not err.

*Did the District Court Err When it Awarded Barbara Attorney's Fees?*

*Standard of Review*

The imposition of sanctions under K.S.A. 2022 Supp. 60-211 is reviewed under an abuse of discretion standard. *Wood v. Groh*, 269 Kan. 420, 429, 7 P.3d 1163 (2000).

"A court abuses its discretion when its action is (1) arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the court; (2) based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024).

*Discussion*

On May 22, 2023, Barbara filed a motion for attorney's fees pursuant to K.S.A. 2022 Supp. 60-211. In her motion, and subsequently reply to responses by David, Barbara alleged that David's counsel failed to disclose legal authority and misled the district court by alleging that *Strom* was an unpublished opinion and was not to be cited. Barbara alleged that but for those actions, the district court would not have entered a judgment against her, and she would not have had to take action to set aside the court's order. Barbara requested that "Respondent or Respondent's counsel be ordered to pay attorney's fees in the amount of $2,000 for this matter as she normally charges $250/hour and spent over 8 hours on this matter."

David did not respond to Barbara's factual allegations. After the district court ruled in favor of Barbara in its "Order Setting Aside Judgment" on September 20, 2023, David filed a Motion to Alter or Amend Judgment on October 18, 2023. In that motion, David did not request that the trial court amend its judgment to provide a statutory or factual basis for the award of attorney's fees.

David raised the attorney fee issue on appeal:

"Courts should take the following factors into consideration when determining whether to sanction a party under K.S.A. 2002 Supp. 60-211 and what kind of sanction to impose: (1) whether the improper conduct was willful or negligent; (2) whether it was part of a pattern of activity or an isolated event; (3) whether it infected the entire pleading

16

or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to injure; (6) what effect it had on the litigation process in time or expense; (7) whether the responsible person is trained in the law; (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and (9) what amount is needed to deter similar activity by other litigants. *Vondracek v. Mid-State Co-Op*, 32 Kan. App. 2d 98, Syl. 7 (2003) (citing *Wood v. Groh*, 269 Kan. 420, 429 [2000]).

"Likewise, '[i]n awarding attorney fees under [the divorce statutes], one factor that the trial judge must consider is the need of one party, weighed against the financial ability of the other to pay.' *Dunn v. Dunn*, 3 Kan. App. 2d 347, Syl. ¶ 3 (1979). In this case, the district court failed to conduct this financial analysis in awarding attorneys fees."

The only point of error David raises on appeal is that the district court did not make a factual finding of David's ability to pay an attorney fee award weighed against Barbara's ability to pay. But because David never objected to this factual omission in district court, he waived that objection. "It is well established in Kansas that in the absence of an objection first made in the trial court omissions in findings will not be considered in the appellate court. The trial court is presumed to have found all of the facts in issue necessary to support the judgment." *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 369, 598 P.2d 188 (1979); see also *Matter of Hay,* 263 Kan. 822, 836, 953 P.2d 666 (1998) ("[W]e have held that in the absence of an objection at the trial court level to the failure to make findings, the trial judge is presumed to have made necessary findings, and this precludes appellate review of this issue.").

Here, David only argues that the district court abused its discretion by committing a factual omission. But he has waived that argument by failing to object in district court. And while the district court did not provide reasons for its award of attorney fees, there is evidence in the record to support such an award. The district court awarded attorney fees

17

at the rate of $250 per hour, which is the hourly rate charged by Barbara's counsel. The district court did not abuse its discretion in awarding fees.

Affirmed.